UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X

**SARATOGA BLACK LIVES MATTER, INC.;**
**ALEXUS BROWN;**
**MOLLY B. DUNN;**
**GABRIELLE C. ELLIOTT;**
**ALEXIS A. FIGUEREO;**
**MARCUS FILIEN;**                                     1:24-cv-865 (TJM/CFH)
**CHANDLER M. HICKENBOTTOM;**
**SAMIRA K. SANGARE;**
**TIEMOGO J. SANGARE;**

                    Plaintiffs,

    -against-

**THE CITY OF SARATOGA SPRINGS;**
**JOHN F. SAFFORD,** Mayor of the City of Saratoga Springs,
sued in his individual and official capacity;
**MED KELLY,** former Mayor of the City of Saratoga Springs,
sued in her individual and official capacity;
**TIM COLL,** Commissioner of Public Safety of the City of
Saratoga Springs, sued in his individual and official capacity;
**ROBIN DALTON,** former Commissioner of Public Safety of
the City of Saratoga Springs, sued in her individual and
official capacity;
**JAMES MONTAGNINO,** former Commissioner of Public
Safety of the City of Saratoga Springs, sued in his individual
and official capacity;
**TYLER McINTOSH,** Chief of Police of the City of Saratoga
Springs, sued in his individual and official capacity;
**SHANE L. CROOKS,** former Chief of Police of the City of
Saratoga Springs, sued in his individual and official capacity;
**JOHN T. CATONE,** former Assistant Chief of Police of the
City of Saratoga Springs, sued in his individual and official
capacity;
**ROBERT JILLSON,** Lieutenant in the City of Saratoga
Springs Police Department, sued in his individual and
official capacity;
**TIMOTHY SICKO,** Sergeant in the City of Saratoga Springs
Police Department, sued in his individual and official capacity;
**ANDREW STREIM,** Sergeant in the City of Saratoga
Springs, Police Department, sued in his individual and official
capacity;
**PAUL VEITCH,** Sergeant in the City of Saratoga Police

Department, sued in his individual and official capacity;

**MEGAN DAVENPORT,** Investigator in the City of Saratoga Springs Police Department, sued in her individual and official capacity;

**JOHN GUZEK,** Investigator in the City of Saratoga Springs Police Department, sued in his individual and official capacity;

**MATTHEW MILLER,** Investigator in the City of Saratoga Springs Police Department, sued in his individual and official capacity;

**STEVEN RESIDE,** Investigator in the City of Saratoga Springs Police Department, sued in his individual and official capacity;

**GLENN A. BARRETT,** police officer in the City of Saratoga Springs Police Department, sued in his individual and official capacity;

**WILLIAM COYNER,** police officer in the City of Saratoga Springs Police Department, sued in his individual and official capacity;

**YEVGENIY KHUORYANSKIY,** police officer in the City of Saratoga Springs Police Department, sued in his individual and official capacity; and

**"JOHN DOES" 1-100,** whose identities and the precise Numbers of which aree not known by plaintiffs, but who are intended to represent City of Saratoga Springs police officers or officials who either directly participated in violating the constitutional rights of one or more of the plaintiffs herein during the period of July 14, 2021 to the present, as described herein and/or who failed to intervene to stop or prevent the violation of the rights of one or more of the plaintiffs during this period, and who are sued in their individual and official capacities,

Defendants.

------------------------------------------------------------------------X

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF ROBIN DALTON AND JAMES MONTAGNINO**

---

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
*Attorneys for Robin Dalton and James Montagnino*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. 1

THE FACTUAL ALLEGATIONS .......................................................................... 1

Robin Dalton ...................................................................................................... 1

James Montagnino .............................................................................................. 3

ARGUMENT
PLAINTIFFS FAIL TO FACTUALLY ALLEGE ANY CLAIMS, SARATOGA
BLM LACKS STANDING TO SUE, AND THE CLAIMS AGAINST JAMES
MONTAGNINO RELATED TO PENDING CRIMINAL CHARGES SHOULD
BE DISMISSED UNDER THE *YOUNGER* DOCTRINE ......................................... 3

A.    Saratoga BLM Lacks Standing To Sue, Depriving the Court of Subject Matter
      Jurisdiction Over Its Claims .................................................................... 5

B.    All Claims Related to Conduct Alleged Before July 10, 2021 Are Time-Barred .............. 7

C.    All Claims Against Ms. Dalton and Mr. Montagnino in their Official Capacities
      Must Be Dismissed ................................................................................. 7

D.    All Claims Against James Montagnino Must Be Dismissed Because He Was Not
      Acting Under Color of State Law .............................................................. 8

E.    Plaintiffs' First Amendment Claims Fail as to Robin Dalton (First Cause of Action) ...... 10

F.    Plaintiffs' First Amendment Claims Fail as to James Montagnino
      Because He Did Not Violate Plaintiffs' Rights (First Cause of Action) ..................... 15

G.    Plaintiffs' Fourth Amendment Claims Fail (Second Cause of Action) ....................... 16

H.    Plaintiffs' Fourteenth Amendment Equal Protection Claims Fails (Third
      Cause of Action) ................................................................................... 18

I.    Plaintiffs' Conspiracy Claim pursuant to 42 U.S.C. § 1985(3) is Barred By The
      Intracorporate Conspiracy Doctrine and, In any Event, is Deficiently Pled
      (Fourth Cause of Action) ........................................................................ 19

J.    Elliott and Figuereo's Fifth Cause of Action for "Interference with Family
      Relationships" is not Pled Against Ms. Dalton or Mr. Montagnino ......................... 20

K.      Plaintiff Figuereo's Sixth Cause of Action for "Deprivation of Property" Fails...............21

L.      Alternatively, as for the Claims against Mr. Montagnino Related to the Pending
        Disorderly Conduct Charge, the Court Should Abstain Pursuant to
        *Younger v. Harris*, 401 U.S. 37 (1971)...........................................................................23

CONCLUSION.............................................................................................................................24

# **TABLE OF AUTHORITIES**

## **Federal Cases**

*Alston v. Bendheim*, 672 F.Supp.2d 378 (S.D.N.Y. 2009)..............................................................13

*Alvarado v. Westchester County*, 22 F.Supp.3d 208 (S.D.N.Y. 2014)............................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................3, 4, 16, 19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)..........................................................3, 4, 19

*Black v. Coughlin*, 76 F.3d 72 (2d Cir. 1996)................................................................................5

*Blue v. City of New York*, 2018 U.S. Dist. LEXIS 93509 (S.D.N.Y. Jun. 4, 2018).......................19

*Carlos v. Santos*, 123 F.3d 61 (2d Cir. 1997) ........................................................................9, 10

*Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*,
    868 F.3d 104 (2d Cir. 2017)....................................................................................................6

*Clyburn v. Shields*, 33 Fed.Appx. 552 (2d Cir. 2002) ..................................................................18

*Colorado Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976) .......................................23

*Davis v. New York*, 311 Fed.Appx. 397 (2d Cir. 2009) ................................................................21

*Dettelis v. Sharbaugh*, 919 F.3d 161 (2d Cir. 2019)....................................................................17

*Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191 (2d Cir. 2002)......................................23

*Dieng v. NYPD*, 2024 U.S. Dist. LEXIS 195569 (S.D.N.Y. Oct. 28, 2024) ...............................13

*Dickerson v. Dickerson*, 2023 U.S. Dist. LEXIS 100900 (E.D.N.Y. Jun. 9, 2023) ........................4

*Dispenza v. City of New York*, 2023 U.S. Dist. LEXIS 38249 (E.D.N.Y. Mar. 7, 2023)..............16

*Elmore v. Onondaga County Sheriffs*, 2023 U.S. Dist. LEXIS 112068
    (N.D.N.Y. Jun. 29, 2023)........................................................................................................7

*Escalera v. Lunn*, 361 F.3d 737 (2d Cir. 2004) ..........................................................................16

*Giano v. Senkowski*, 54 F.3d 1050 (2d Cir. 1995) ......................................................................18

*Harding v. Hould*, 2024 U.S. Dist. LEXIS 141944 (S.D.N.Y. Aug. 9, 2024)..............................22

*Hartline v. Gallo*, 546 F.3d 95 (2d Cir. 2008) ...............................................................19

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .................................................5

*Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333 (1977) ..........................6

*Hunter v. Child. Protective Servs. of Niagara Cnty. CPS*, 2024 U.S. Dist. LEXIS
    179252 (W.D.N.Y. Jul. 18, 2024)..............................................................................20

*Hunter v. Cortland Hous. Auth.*, 2024 U.S. Dist. LEXIS 84218 (N.D.N.Y. May 9, 2024) ........5, 6

*Jackson v. Williams*, 2017 U.S. Dist. LEXIS 45184 (N.D.N.Y. Mar. 28, 2017)............................8

*Kee v. City of New York*, 12 F.4th 150 (2d Cir. 2021) ...................................................17

*Kern v. City of Rochester*, 93 F.3d 38 (2d Cir. 1996) .....................................................9

*Kislowski v. Kelley*, 2020 U.S. Dist. LEXIS 17018 (N.D.N.Y. Jan. 30, 2020) .............14

*Kugler v. Helfant*, 421 U.S. 117 (1975)........................................................................23

*Kye v. City of New York*, 2023 U.S. Dist. LEXIS 164453 (S.D.N.Y. Sep. 15, 2023) .................19

*Lastra v. Barnes & Noble Bookstore*, 2011 U.S. Dist. LEXIS 150112
    (S.D.N.Y. Jan. 3, 2012)..............................................................................................17

*League of Women Voters of Nassau County v. Nassau County Bd. of Supervisors*,
    737 F.2d 155 (2d Cir. 1984)........................................................................................6

*Lynch v. City of New York*, 952 F.3d 67 (2d Cir. 2020).........................................12, 13

*McKinnon v. Patterson*, 568 F.2d 930 (2d Cir. 1977), *cert. den.*, 434 U.S. 1087 (1978)...............4

*Mitchell v. Annucci*, 2019 U.S. Dist. LEXIS 120546 (N.D.N.Y. Jul. 19, 2019) ...........12

*Moffitt v. Town of Brookfield*, 950 F.2d 880 (2d Cir. 1991) ...........................................4

*Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)...............8

*Nielsen v. Rabin*, 746 F.3d 58 (2d Cir. 2014) ................................................................4

*Nieves v. Bartlett*, 587 U.S. 391 (2019) .......................................................................11

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011) .................................................................6

*O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir. 1988)........................................................14

*Ormiston v. Nelson*, 117 F.3d 69 (2d Cir. 1997)..........................................................7

*Ortiz v. Wagstaff*, 523 F.Supp.3d 347 (W.D.N.Y. 2021).............................................7

*Owens v. Okure*, 488 U.S. 235 (1989) .........................................................................7

*Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 (1979) ...............18

*Rae v. County of Suffolk*, 693 F.Supp.2d 217 (E.D.N.Y. 2010)....................................9

*Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) ...............................................................8

*Reynolds v. Vill. of Chittenango*, 2023 U.S. Dist. LEXIS 178668 (N.D.N.Y. Oct. 4, 2023) .........7

*Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208 (2d Cir. 2000).....................................17

*Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir. 1988) .......................................................5

*Santos v. Syracuse Police Dep't*, 2022 U.S. Dist. LEXIS 206681
    (N.D.N.Y. Nov. 15, 2022) ......................................................................................21

*Sheriff's Silver Star Ass'n of Oswego County, Inc. v. County of Oswego*, 56 F.Supp.2d 263
    (N.D.N.Y. 1999) .....................................................................................................8

*Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995) ..................................10, 16

*Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020).....................................................4

*Thomas v. Pingotti*, 2017 U.S. Dist. LEXIS 144173 (N.D.N.Y. Sep. 6, 2017)............18

*United Bhd. of Carpenters & Jointers, Local 610 v. Scott*, 463 U.S. 825 (1983) ........20

*U.S. v. Herron*, 18 F.Supp.3d 214 (E.D.N.Y. 2014).....................................................22

*U.S. v. Knotts*, 460 U.S. 276 (1983).............................................................................13

*USA v. Entm't Grp., Inc. v. Tony*, 847 Fed.Appx. 642 (11th Cir. 2021) .......................12

*Victory v. Pataki*, 814 F.3d 47 (2d Cir. 2016)...............................................................4

*Wahatalo v. Begley*, 2024 U.S. Dist. LEXIS 106934 (D. Conn. Jun. 17, 2024) ..........11

*Walker v. Shepard*, 107 F.Supp.2d 183 (N.D.N.Y. 2000) ............................................19

*Williams v. Calderoni*, 11 Civ. 3020 (CM), 2012 U.S. Dist. LEXIS 28723

(S.D.N.Y. Mar. 1, 2012) ...................................................................................................18

*Wright v. Smith*, 21 F.3d 496 (2d Cir. 1994) ...............................................................4

*Younger v. Harris*, 401 U.S. 37 (1971) ......................................................................23

## State Cases

*Boyle v. Kelley*, 42 N.Y.2d 88 (1977) ..........................................................................21

*People v. Figuereo*, 2023 N.Y. Misc. LEXIS 10371
    (City Ct. Saratoga Springs, Sep. 8, 2023) ..............................................................10

*People v. Werner*, ___ A.D.3d ___, 2024 N.Y. App. Div. LEXIS 4792
    (3d Dept. Sep. 26, 2024) .........................................................................................10

## Rules and Statutes

N.Y. C.P.L.R. § 214 .......................................................................................................7

N.Y. Crim. Proc. Law § 110.15 .............................................................................10, 15

N.Y. Crim. Proc. Law § 110.20 ...................................................................................10

N.Y. Penal Law § 240.20 .............................................................................................11

## Miscellaneous Authority

5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1281 (1969) .....................5

## PRELIMINARY STATEMENT

Defendants Robin Dalton, former Commissioner of Public Safety of the City of Saratoga Springs, sued in her individual and official capacity, and James Montagnino, former Commissioner of Public Safety, sued in his individual and official capacity, submit this Memorandum of Law in support of their motion to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 12(b)(1).

## THE FACTUAL ALLEGATIONS

Plaintiffs have filed a ninety-eight-page Complaint, comprised of 482 paragraphs of allegations. However, despite the length of Plaintiffs' filing, the narrative lacks facts causally relating any alleged conduct by Ms. Dalton or Mr. Montagnino to any alleged constitutional violations. Rather, the Complaint relies entirely on empty platitudes, allegations of societal wrongs, and broad characterizations of conduct to support Plaintiffs' claims. Generally, Plaintiffs assert that in response to various events both within Saratoga Springs and in other parts of the country, they engaged in a series of "persistent," and admittedly disruptive demonstrations which Defendants attempted to curtail. The specific facts alleged against Ms. Dalton and Mr. Montagnino are as follows, and include, for purposes of this motion, those facts that Plaintiffs discerned from a report prepared by the New York Attorney General's Office:

**Robin Dalton**

- "Prior to July 14, 2021," Ms. Dalton was hostile and antagonistic to Saratoga Black Lives Matter, Inc. (hereinafter "Saratoga BLM") and its "members and leaders," insofar as she texted to someone that she wanted to "kick" one plaintiff in the mouth, and wanted to "punch" another plaintiff "in the mouth" in response to things they publicly said about her and the police, including calling the police murderers, and her a racist. (Compl. ¶ 11).
- At a June 2021 press conference, Ms. Dalton made "baseless, insulting, and demeaning allegations blaming plaintiff Saratoga BLM, its members, and leaders for an alleged increase in crime in Saratoga Springs" as well as a desire to stop BLM's "narrative." (*id.*).
- In March and May 2021, Ms. Dalton "ordered" Saratoga Springs Police Chief Crooks to arrest protestors "when no offenses had taken place," and criticized police when they did not make those arrests. (*id.*).

- On July 14, 2021, "in response to demands" from Ms. Dalton and the mayor, and "upon the orders of defendant Police Chief Crooks," police "rushed" a crowd of dispersing protestors and "violently arrested" five of them. (*id.*)
- On July 14, 2021, Chief Crooks, "acting pursuant to direction and orders from the Mayor and Ms. Dalton," and pursuant to a "plan," unlawfully surveilled protestors during the protest by way of "monitoring, tracking, and reporting on" them. (*id.*).
- Ms. Dalton, and other defendants, were "hostile" to the protesters and the growth of their movement. (Compl. ¶¶ 93, 94).
- At a June 28, 2021, press conference, Ms. Dalton approved the Assistant Police Chief "angrily express[ing] impatience with and hostility towards" protestors. (Compl. ¶¶ 97, 100).
- Ms. Dalton "defamed, attacked, and threatened" people who exercised their First Amendment rights concerning racism, and then said that the Assistant Chief had "killed it" during the press conference. (Compl. ¶¶ 101, 102).
- Ms. Dalton was "present" at a July 6, 2021, city council meeting when the Mayor was "scolding" and interrupting members of the public, and did not stop the Mayor from doing so. (Compl. ¶¶ 141-43).
- Ms. Dalton gave "approval," on June 28, 2021, and "subsequent ratification" to "statements" made by other defendants about protests. (Compl. ¶ 145).
- Ms. Dalton gave "approval" to an "operational plan" prepared by the Police Department concerning a July 14, 2021, protest, and "requested" the presence of outside law enforcement agencies at the protest. (Compl. ¶ 147-49).
- An "unjustified large, riot-clad, police presence" at a protest was "intended to intimidate and scare" Plaintiffs, and was "approved of and ratified by" Defendants, including Ms. Dalton.
- Ms. Dalton and the Mayor were "so engulfed in their irrational and racist hatred" of Plaintiffs that there were communications of "bloodlust" and "hate" toward Plaintiffs, and during a protest, after Plaintiffs admittedly stopped traffic, Ms. Dalton said, "If someone doesn't get arrested I'm going to lose my mind. I know you know that. But I'm just saying it one more time." (Compl. ¶¶ 178-79, 182).
- Ms. Dalton sent additional texts asking that the Police Department make arrests, after which the Police Department "violently arrested five individuals [*sic*] peaceful protestors," including specific mention of certain plaintiffs (Compl. ¶¶ 184-87, 189-92).
- At a City Council meeting on July 20, 2021, after one plaintiff yelled during public comment, and after the Mayor requested that police officers order people to leave, Ms. Dalton did not "intervene" and "fully ratified" the Mayor's actions. (Compl. ¶¶ 254-65).
- After July 14, 2021, the Mayor and Ms. Dalton continued to "pressure" the Police Department to make arrests. (Compl. ¶ 267).
- Multiple instances of allegations that Ms. Dalton "ratified" and "approved" other defendants' conduct with no factual substantiation. (*passim*).

**James Montagnino**

- Mr. Montagnino replaced Ms. Dalton as Commissioner of Public Safety after elections were held in November 2022 (Compl. ¶ 364).
- In February 2023, Mr. Montagnino "commence[d] and prosecut[ed] a false disorderly conduct charge against plaintiff Hickenbotttom, for allegedly disturbing the February 7, 2023 City Council meeting and allegedly causing public inconvenience, annoyance or alarm by speaking during the Public Comment period." (Compl. ¶ 367). Specifically, it was "false" for Mr. Montagnino to sign an accusatory instrument alleging that Hickenbottom had the "intent to cause public inconvenience, annoyance, or alarm." (Compl. ¶¶ 375-76).
- On April 6, 2023, Mr. Montagnino signed a statement "falsely" alleging that Figuereo had "'physically' taken the microphone" during a public comment period of a City Council meeting," which supported charges for obstructing governmental administration in the second degree and disorderly conduct. The City Court dismissed the obstruction charge but declined to dismiss the disorderly conduct charge, which currently remains pending. (Compl. ¶¶ 398-408).

As will be discussed, none of the facts alleged support a claim that Ms. Dalton or Mr. Montagnino violated anyone's rights. Accordingly, the Complaint should be dismissed.

## ARGUMENT

### PLAINTIFFS FAIL TO FACTUALLY ALLEGE ANY CLAIMS, SARATOGA BLM LACKS STANDING TO SUE, AND THE CLAIMS AGAINST JAMES MONTAGNINO RELATED TO PENDING CRIMINAL CHARGES SHOULD BE DISMISSED UNDER THE *YOUNGER* DOCTRINE.

The Complaint is devoid of any factual allegations that demonstrate a basis for a section 1983 claim against Robin Dalton or James Montagnino. For this reason, they are entitled to dismissal of the Complaint. A complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the complaint does not need detailed factual allegations, it nevertheless requires "more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). In other words, "'naked assertions' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

To state a claim brought pursuant to 42 U.S.C. § 1983, a plaintiff "must allege (1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Dickerson v. Dickerson*, 2023 U.S. Dist. LEXIS 100900, *8 (E.D.N.Y. Jun. 9, 2023). "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]). Thus, a plaintiff asserting a section 1983 claim must "allege a tangible connection between the acts of a defendant and the injuries suffered." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. den.*, 434 U.S. 1087 (1978).

"[A] plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Where a claim is alleged against an individual in a supervisory role, "[t]The focus is on what the *supervisor* did or caused to be done, 'the resulting injury attributable to his conduct, and the *mens rea* required of him to be held liable, which can be no less than the *mens rea* required of anyone else." *Id.* (emphasis in original). In other words, "[a] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Victory v. Pataki*, 814 F.3d 47, 67

(2d Cir. 2016) (quoting *Black v. Coughlin*, 76 F.3d 72, 74 [2d Cir. 1996]) (internal brackets omitted).

By virtue of the Complaint's length and confusing amalgamation of claims, it is difficult to effectively isolate discrete bases for relief to which to respond. Ms. Dalton and Mr. Montagnino identify what appear to be the actual specific bases for Plaintiffs' claim, each contained in causes of action which consist of little more than legal conclusions with non-specific reference to the dozens of pages of factual narrative. Suffice it to say, Ms. Dalton and Mr. Montagnino ask the Court to dismiss the entirety of the Complaint against them because Plaintiffs have failed to support their claims beyond anything more than wild conjecture, and repeated reliance on broad characterizations. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1281, at 36 (1969) ("unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.").

**A.**     **Saratoga BLM Lacks Standing To Sue, Depriving the Court of Subject Matter Over Its Claims.**

All claims alleged by Saratoga BLM should be dismissed because it lacks standing to sue. An organization can possess standing in two ways: "First, it may plead that it suffered an injury 'in its own right,' including an impairment of its ability to fulfill its mission," referred to as "organizational standing." *Hunter v. Cortland Hous. Auth.*, 2024 U.S. Dist. LEXIS 84218, *11 (N.D.N.Y. May 9, 2024) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 [1982]). Second, an organization can possess so-called "association standing" whereby it can have standing to "bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual

members in the lawsuit." *Id.* at *12 (quoting *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343 [1977]).

Plaintiffs have plead no facts demonstrating that Saratoga BLM possesses organizational standing. Rather, they assert in conclusory fashion that "Saratoga BLM has organizational standing as its constitutionally protected expressive and associational activities were directly and intentionally harmed and violated by defendant City and the other defendants due to the content of its activism and advocacy." (Compl. ¶ 31). To show organizational standing, Saratoga BLM must plead "(i) an imminent 'injury in fact' to *itself as an organization (rather than to its members*) that is 'distinct and palpable'; (ii) that its injury is 'fairly traceable' to [the defendants' actions]; and (iii) that a favorable decision would redress its injuries." *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (hereinafter "*Centro De La Comunidad*") (emphasis added). Saratoga BLM pleads only claims belonging to individuals; it has not factually pled that any actions by any defendant have injured it "as an organization." This is distinguishable from the facts in *Centro De La Comunidad*, where the organization adequately pled standing because it alleged that a law prevented it from organizing laborers. *See id.* at 110.

Second Circuit authority likewise makes clear that Saratoga BLM lacks associational standing. "It is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983, as [the Second Circuit has] 'interpreted the rights § 1983 secures to be personal to those purportedly injured.'" *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (quoting *League of Women Voters of Nassau County v. Nassau County Bd. of Supervisors*, 737 F.2d 155, 160 [2d Cir. 1984]) (internal brackets omitted). Moreover, the third prong of the *Centro De La Comunidad* standard is not met, because the case

cannot proceed without the participation of the individual plaintiffs. That is, the claims here require

an analysis of testimony, allegations, and damages of each individual. Thus, the claims brought by

Saratoga BLM should be dismissed for want of subject matter jurisdiction based on its lack of

standing.

**B.**    **All Claims Related to Conduct Alleged Before July 10, 2021 Are Time-Barred.**

Plaintiffs assert a number of claims against Defendants based upon actions allegedly taken

at times before July 10, 2021. However, any such claims are barred by the statute of limitations.

Plaintiffs filed their Complaint on July 10, 2024 (*see* Docket No. 1). "In section 1983 actions, the

applicable limitations period is found in the 'general or residual state statute of limitations for

personal injury actions.'" *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (quoting *Owens v.

Okure*, 488 U.S. 235, 249-50 [1989]). "New York's three-year statute of limitations for unspecified

personal injury actions, New York Civil Practice Law and Rule § 214(5), governs section 1983

actions in New York." *Id.* Therefore, any claims alleged for actions before July 10, 2021, are barred

by the limitations period.

**C.**    **All Claims Against Ms. Dalton and Mr. Montagnino in their Official Capacities Must
Be Dismissed.**

Plaintiff names Ms. Dalton and Mr. Montagnino in their official capacitis, but has also

named the City of Saratoga Springs, their former employer, as a defendant as well. It is well-settled

that "Section 1983 claims against municipal employees sued in their official capacity are treated

as claims against the municipality itself." *Elmore v. Onondaga County Sheriffs*, 2023 U.S. Dist.

LEXIS 112068, *9 (N.D.N.Y. Jun. 29, 2023) (quoting *Ortiz v. Wagstaff*, 523 F.Supp.3d 347, 361

[W.D.N.Y. 2021]). "[F]or this reason, courts routinely dismiss official capacity claims as

redundant when the municipal entity is also a defendant to the same claims." *Reynolds v. Vill. of

Chittenango*, 2023 U.S. Dist. LEXIS 178668, *17 (N.D.N.Y. Oct. 4, 2023) (quoting *Sheriff's

*Silver Star Ass'n of Oswego County, Inc. v. County of Oswego*, 56 F.Supp.2d 263, 265 n.5 [N.D.N.Y. 1999]); *see also Alvarado v. Westchester County*, 22 F.Supp.3d 208, 213 (S.D.N.Y. 2014) (granting 12[b][6] motion dismissing official capacity claims as "redundant and an inefficient use of judicial resources" in light of the same claims being asserted against government entity). Because the City is a defendant as well, the official capacity claims should be dismissed.

In addition, on their merits, the claims against Ms. Dalton and Mr. Montagnino in their official capacities must be dismissed because, there are no facts alleged supporting a custom or policy to deprive Plaintiff or anyone else of their constitutional rights. The law is plain that municipal liability only attaches if a plaintiff can demonstrate that an alleged policy maker created or continued a policy of discrimination. *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). However, "*Monell* does not apply to state officials or individuals who are sued in their individual capacity." *Jackson v. Williams*, 2017 U.S. Dist. LEXIS 45184, *6 (N.D.N.Y. Mar. 28, 2017). Thus, to the extent that Plaintiff seeks to allege any official capacity claims against Ms. Dalton or Mr. Montagnino, they must be dismissed.

**D.** **All Claims Against James Montagnino Must Be Dismissed Because He Was Not Acting Under Color of State Law.**

The entirety of the Complaint against Mr. Montagnino must be dismissed because Plaintiffs fail to establish that he was acting under color of state law. It is beyond cavil that claims for violations of the Constitution cannot be brought against private parties unless their actions are "fairly attributable to the state," a requirement that will only be met if the private parties "acted in concert with state actors." *Rendell-Baker v. Kohn*, 457 U.S. 830. 838 n.6 (1982). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer

8

is clothed with the authority of state law." *Carlos v. Santos*, 123 F.3d 61, 65 (2d Cir. 1997) (quoting *Kern v. City of Rochester*, 93 F.3d 38, 43 [2d Cir. 1996]).

Plaintiffs' claims against Mr. Montagnino are limited to his having signed criminal accusatory instruments accusing Figuereo of having engaged in disruptive conduct during City Council meetings. These instruments were not alleged to have been signed by Mr. Montagnino as a police officer because he is not one. Rather, they were signed in his capacity as a citizen, even though he was acting as a city commissioner at the time Figuereo engaged in the offending conduct.

In *Carlos*, the Second Circuit observed that "[a]ny citizen" may "bring a police complaint in his own name," and, thus, making allegations to support a criminal complaint are "not 'made possible only because the wrongdoers were clothed with the authority of state law.'" *Id.* at 65 (tacitly quoting *Kern*, *supra*) (internal brackets omitted). In *Rae v. County of Suffolk*, 693 F.Supp.2d 217 (E.D.N.Y. 2010), the Eastern District held that a police officer who had allegedly falsely accused her husband of rape was not acting under color of state law for purposes of a section 1983 malicious prosecution claim. Observing that filing a complaint alleging that she was raped was not something "made possible only because the wrongdoer is clothed with the authority of state law," the court found that she was not acting under color of state law when the complaint was made. *Rae*, 693 F.Supp.2d at 228.

Here, while Mr. Montagnino was alleged to have made the complaint about Figuereo's actions taken during a city council meeting, any witness would have been free to file a complaint concerning Figuereo's conduct at the meeting. For instance, with respect to the April 4, 2023, complaint, the city court decision reflects that Mr. Montagnino filed a supporting deposition to support the information that was sworn by a police officer. *People v. Figuereo*, 2023 N.Y.Misc.

LEXIS 10371, **2-3 (City Ct. Saratoga Springs, Sep. 8, 2023). A supporting deposition is a document filed by any person containing factual allegations of an evidentiary character to support the charges. N.Y. Crim. Proc. Law § 110.20. Supporting depositions are routinely filed by civilians to support complaints submitted by law enforcement. *See*, *e.g.*, *People v. Werner*, ___ A.D.3d ___, 2024 N.Y. App. Div. LEXIS 4792, *3 (3d Dept. Sep. 26, 2024) (recognizing that victim of crime filed supporting deposition). Civilians can also sign the actual accusatory instruments, themselves, and need not provide their statements via supporting deposition. *See*, *e.g.*, *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (recognizing that arresting officer advised of crime by victim "who has signed a complaint or information charging someone with a crime" has probable cause to arrest); *see also* N.Y. Crim. Proc. Law § 100.15(1) (a criminal complainant "may be *any person* having knowledge, whether personal or upon information and belief, of the commission of the offense or offenses charged.") (emphasis added).

In other words, any attendee of a City Council meeting would have been authorized to complain about Figuereo's behavior to a police officer, and to sign an accusatory instrument or supporting deposition. Mr. Montagnino's filing of the same complaint available to any member of the public, was not "made possible only because the wrongdoer is clothed with the authority of state law." *See Carlos*, *supra*. Thus, Mr. Montagnino was not acting under color of state law. This precludes all of Plaintiffs' claims insofar as that are asserted against Mr. Montagnino.

**E.    Plaintiffs' First Amendment Claims Fail as to Robin Dalton (First Cause of Action).**

Plaintiffs first allege that Defendants retaliated against them by arresting certain plaintiffs "without legal cause," by engaging in "unlawful surveillance," and "unlawful seizures," and by "stigmatizing and humiliating plaintiffs." They claim that their speech, expression, assembly,

association, petition for redress liberties are all implicated. The claim is meritless, regardless of the specific liberty at issue.

As for the arrests, Plaintiffs conveniently bury and minimize (yet cannot escape entirely) the fact that arrests were effectuated because Plaintiffs were *breaking the law*. Plaintiffs admit that protestors "stopped on Broadway" to give "speeches" and that they "stopped several vehicles" in a lane of traffic for 13 minutes. They claim that the vehicles should have simply "done U-turns" and traveled on another block (which, itself, could potentially be a statutory violation) to justify the illegal conduct in which Plaintiffs admit they were engaged. One vehicle occupant felt it appropriate to call 911 because of the condition on the street (Plaintiffs actually criticize the occupants of that vehicle occupants for giving a false reason to the 911 dispatchers as to why they sought to have their lane of travel made clear of those blocking it). (Compl. ¶¶ 162-73). Intentionally blocking traffic violates, at the very least, N.Y. Penal Law § 240.20(5), and by admitting they engaged in unlawful conduct, Plaintiffs have admitted that there existed probable cause for arrest. *See Wahatalo v. Begley*, 2024 U.S. Dist. LEXIS 106934, *11 (D.Conn. Jun. 17, 2024) ("by admitting guilt, Plaintiff has effectively conceded that whoever initiated the charge acted with probable cause."). In the First Amendment context, like in a Fourth Amendment claim, "[t]he plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019).

Plaintiffs allege that Ms. Dalton's texts evidencing frustration at the ongoing disruptive protests signal a custom or policy of "personal animosity" toward the protestors. (Compl. ¶ 197). However, venting in frustration about certain individuals' conduct hardly supports an allegation that there was a custom or policy. For that matter, Plaintiff asserts nothing that demonstrates any custom or policy on the part of Ms. Dalton, let alone one that would subject her to suit in her

individual capacity. Plaintiffs contend there was a generally hostile response from Ms. Dalton (and the other defendants) to the protestors. They make a series of accusations about intent: they claim, for instance, that the defendants had law enforcement present at their demonstration to "intimidate" them. These claims are rank speculation. Moreover, the Complaint fails to factually relate much of it to Ms. Dalton, or to show why expressions of frustration reflect a desire to violate any individuals' rights. Plaintiffs cannot rely simply on their own characterizations of the interactions in order to satisfy his pleading requirements, particularly since they lack specifics. *See, e.g.*, *Mitchell v. Annucci*, 2019 U.S. Dist. LEXIS 120546, \*\*21-22 (N.D.N.Y. Jul. 19, 2019) (threats and harassment were insufficiently pled to constitute adverse action, and plaintiff failed to identify who made what threats).

Plaintiffs further suggest that the Police Department's use of riot gear violated their rights. (Compl. ¶¶ 175, 177). However, simply pleading the presence of a large police force does not articulate an excessive force claim. "[T]he mere presence of police officers is not a First Amendment violation, even if they are wearing riot gear." *USA Entm't Grp., Inc. v. Tony*, 847 Fed.Appx. 642, 647 (11th Cir. 2021).

The Second Circuit's opinion in *Lynch v. City of New York*, 952 F.3d 67 (2d Cir. 2020), is instructive. That case, which also involved allegations stemming from a protest, accused one officer of heading a task force to respond to public demonstrations, that that officer had a "reputation for being hostile to the rights of demonstrators," that the officer knew the plaintiff and had had a "stare-down" with him at the precinct, and that the officer directed that the plaintiff, upon arrest, be denied food, drink, and access to the bathroom because the officer was hostile to demonstrators and the plaintiff, personally. *Lynch*, 952 F.3d at 77. The Second Circuit held that

the plaintiff failed to factually allege a claim against that officer. *Id.* Here, too, Plaintiff fails to articulate personal involvement in any of the alleged deprivations.

Plaintiffs' claims of unlawful surveillance likewise fail. A claim of unlawful surveillance will not prevail where the alleged surveillance occurred "in public, where [Plaintiffs have] no reasonable expectation of privacy in [their] movements." *See Dieng v. NYPD*, 2024 U.S. Dist. LEXIS 195569, *6 (S.D.N.Y. Oct. 28, 2024) (citing *U.S. v. Knotts*, 460 U.S. 276, 281 [1983], for premise that "a person travelling on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another."). In any event, Plaintiffs fail to articulate any facts reflecting that Ms. Dalton or Mr. Montagnino were individually implicated in any "surveillance." Likewise, Plaintiffs have asserted no facts supporting their "unlawful seizures" claim. To the extent this is intended to mean "seizures" in a sense other than an arrest, there are no facts alleged that Ms. Dalton or Mr. Montagnino were involved in any seizures.

Plaintiffs also contend that Ms. Dalton had an obligation to prevent the Mayor from curtailing their right to speak. This claim is baseless. Initially, Plaintiffs fail to establish that the Mayor violated their rights. "The failure to state a claim for an underlying constitutional violation forecloses supervisory liability." *Alston v. Bendheim*, 672 F.Supp.2d 378, 388 (S.D.N.Y. 2009). Ms. Dalton was not Mayor Kelly's supervisor, but even if she had some supervisory authority, Plaintiffs once again concede facts demonstrating that they were engaged in disruptive conduct. Plaintiff Dunn admittedly "stood up and yelled, interrupting City Council members." (Compl. ¶ 254). Ms. Dalton is not a police officer. Characterizing disruptive behavior as "courageous" or "brave" does not mean it is appropriate, or diminish the City Council's ability to control the meeting. (Compl. ¶¶ 251, 254).

In any event, even if Mayor Kelly somehow violated Plaintiffs' rights by not allowing them to disrupt a City Council meeting, there are no allegations that Ms. Dalton had any authority, or the means, to stop her. First, Ms. Dalton is not a police officer. The law is that "[a] *police officer* has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other *officers*." *Ricciuti v. N.Y. City Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (emphasis added) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11 [2d Cir. 1988]). As discussed, Plaintiffs must allege individual involvement in any alleged constitutional violations. They cannot possibly implicate Ms. Dalton for somehow preventing the Mayor from engaging in any perceived constitutional violations.

In every way, Plaintiffs fail to meet their pleading obligations to establish a basis for a constitutional claim. Plaintiffs attempts to remedy their inability to causally connect Ms. Dalton with their claims by repeating the magic language that Ms. Dalton "ratified" or "approved" certain actions. However, without facts, this amounts to nothing more than legal conclusions that fail the pleading standards. *See Kislowski v. Kelley*, 2020 U.S. Dist. LEXIS 17018, **19-20 (N.D.N.Y. Jan. 30, 2020) (unsubstantiated allegations that "upon information and belief" the defendants "approved of and ratified" conduct, "acted in accordance with the policy, practice, custom, and directives" of the county, and that the county established "policy, practice, custom, and/or are deliberately indifferent" to wrongful use of legal processes were insufficient because they did "little more than state conclusory allegations of municipal liability unaccompanied by any facts to support these allegations").

**F.    Plaintiffs' First Amendment Claims Fail as to James Montagnino Because He Did Not Violate Plaintiffs' Rights (First Cause of Action).**

Plaintiffs' First Amendment claims also fail with respect to Mr. Montagnino. Their Complaint does not identify specifically which allegations they believe supports their First Amendment theory against him. However, they presumably rely upon the sole claims against him in their narrative: that by swearing to allegations to support accusatory instruments based on their disruptive conduct at City Council meetings, Mr. Montagnino deprived them of their First Amendment rights. This claim is devoid of merit.

As to both accusatory instruments at issue, Plaintiff only appears to take issue with the statutory language that must be included in the instrument. That is, Figuereo believes that Mr. Montagnino's allegation that he had "intent" to cause annoyance, inconvenience, or alarm, was sufficiently false to rise to a First Amendment violation (Compl. ¶¶ 398, 399). However, Figuereo does not, apparently, dispute the factual allegations that he interrupted the public comment period, shouted over someone, or took the microphone from another person. Therefore, he cannot allege that Mr. Montagnino said anything that was untrue. As for the claim of intent, this is an allegation, not a statement of fact. Again, the relevant statutes are instructive. An accusatory instrument contains both an "accusatory part" and a "factual part," the accusatory part of which "must designate the offense or offenses charged," and the "factual part" which "must contain a statement of the complainant alleging facts of an evidentiary character supporting or tending to support the charges." N.Y. Crim. Proc. Law §§ 100.15(2); (3).

In any event, Plaintiffs have not established that the charges were disposed of favorably to Figuereo. As Plaintiffs readily concede, one charge remains pending, even if the Court disagreed that the allegations were sufficient to constitute obstruction of governmental administration.

Therefore, Plaintiffs fail to articulate a claim against Mr. Montagnino. And, again, as discussed above in the context of the claims asserted against Ms. Dalton, the Complaint

**G.     Plaintiffs' Fourth Amendment Claims Fail (Second Cause of Action)**

Plaintiffs claim that certain plaintiffs' Fourth Amendment rights were violated in the context of unlawful seizures, unlawful arrest, and malicious prosecution. For the reasons discussed above, Plaintiffs fail to articulate facts supporting those claims.

On an unlawful arrest claim, courts in this Circuit look to the elements of a false arrest claim under New York state law. *See Dispenza v. City of New York*, 2023 U.S. Dist. LEXIS 38249, *19 (E.D.N.Y. Mar. 7, 2023). To articulate false arrest, a plaintiff must demonstrate "(1) that defendant intended to confine plaintiff; (2) that plaintiff was conscious of the confinement; (3) that plaintiff did not consent to the confinement; and (4) that the confinement was not otherwise privileged." *Dispenza*, at *19 (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). "Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004).

As for Ms. Dalton, the same reasons why the First Amendment claims fail exist here. Namely, Plaintiffs admit that they were engaged in unlawful conduct at the time of the alleged arrests. This privileges the arrest of those plaintiffs. Moreover, because Plaintiffs fail to articulate any individual involvement by Ms. Dalton with regard to the arrest, no claim can be sustained against her. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (plaintiff in a section 1983 suit must "plead that each Government-official defendant, through his own individual actions, has violated the Constitution.")

16

As for Mr. Montagnino, Plaintiffs have alleged no facts demonstrating that he had individual involvement in an arrest. To the contrary, the most they allege is that he provided the factual basis for an accusatory instrument. Thus, they fail to allege individual involvement. In any event, as discussed above, Mr. Montagnino's statements supporting the charges against Plaintiff Figuereo were not wrongful, and therefore do not form the basis of any constitutional violation.

Plaintiffs' unlawful seizure claim fails as well for the same reasons as applies to the wrongful arrest claim. *See Lastra v. Barnes & Noble Bookstore*, 2011 U.S. Dist. LEXIS 150112, *5 (S.D.N.Y. Jan. 3, 2012) (unlawful seizure elements are the same as unlawful imprisonment, which are the same as the elements for false arrest).

Lastly, the malicious prosecution claim fails. Such a claim requires both a Fourth Amendment violation and facts pled to meet the state law malicious prosecution elements: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Dettelis v. Sharbaugh*, 919 F.3d 161, 163-64 (2d Cir. 2019). "A plaintiff must also demonstrate a 'sufficient post-arraignment liberty restraint.'" *Kee v. City of New York*, 12 F.4th 150, 162 (2d Cir. 2021) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 [2d Cir. 2000]).

Here, Plaintiffs fail to even remotely allege facts supporting these elements. They have not alleged any "post-arraignment liberty restraint." As for Ms. Dalton, they have not alleged that she had any individual involvement in the commencement or continuation of a criminal proceeding and, as for Mr. Montagnino, Plaintiffs' own allegations demonstrate that there was probable cause supporting the accusatory instruments he signed. Accordingly, the Fourth Amendment cause of action fails.

**H.    Plaintiffs' Fourteenth Amendment Equal Protection Claim Fails (Third Cause of Action.**

Plaintiffs conclude, without a shred of factual articulation, that Defendants' actions, including Ms. Dalton and Mr. Montagnino, were "based on race." Predictably, they take the same tack as their other causes of action, failing to identify any facts in their lengthy narrative, instead concluding that Defendants sought to discriminate against them based on race. The claim must be dismissed.

"To prove an equal protection violation, claimants must prove purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (internal citation omitted). Such discrimination must "be alleged in a non-conclusory fashion." *Clyburn v. Shields*, 33 Fed.Appx. 552, 555 (2d Cir. 2002). "Conclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are patently insufficient to plead a valid claim under the Equal Protection clause." *Thomas v. Pingotti*, 2017 U.S. Dist. LEXIS 144173, *15 (N.D.N.Y. Sep. 6, 2017).  "It is hornbook law that the mere fact that something bad happens to a member of a particular racial group does not, without more, establish that it happened *because* the person is a member of that racial group." *Williams v. Calderoni*, 11 Civ. 3020 (CM), 2012 U.S. Dist. LEXIS 28723, *17 (S.D.N.Y. Mar. 1, 2012) (emphasis in original). The defendant must have "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).

Here, again, Plaintiffs fail to identify a single fact against *any* defendant, much less Ms. Dalton or Mr. Montagnino, even arguably demonstrating that there was discrimination based on race. Like with the First and Fourth Amendment claims, Plaintiffs assert endless conjecture and characterization, assigning malintent to every defendant based on race, and relying on innuendo.

However, "[s]peculation and innuendo are not facts." *Walker v. Shepard*, 107 F.Supp.2d 183, 189 (N.D.N.Y. 2000). Plaintiffs must articulate facts, not hollow accusations, asserting that conduct was racially motivated. Plaintiffs, therefore, "ha[ve] not 'nudged [their] claims' of invidious discrimination 'across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570) (internal brackets omitted). *See Kye v. City of New York*, 2023 U.S. Dist. LEXIS 164453, *23 (S.D.N.Y. Sep. 15, 2023) (alleging that "the difference in treatment of Plaintiff [ ] and the white males, persons engaged in identical conduct, is attributable only to the difference in skin color," constitutes a "bare legal conclusion" that fails to adequately plead an Equal Protection claim).

**I.**     **Plaintiffs' Conspiracy Claim pursuant to 42 U.S.C. § 1985(3) is Barred By The Intracorporate Conspiracy Doctrine and, In any Event, is Deficiently Pled (Fourth Cause of Action.**

Each of the myriad defendants whom Plaintiffs have sued is either a current or former official of, or a current or former police officer employed by, the City of Saratoga Springs. Therefore, any conspiracy claims are barred by the intracorporate conspiracy doctrine. "[U]nder the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008). (adopting reasoning articulated by district court appealed from). Thus, employees or officials of a single municipality "cannot be held liable for conspiracy under § 1985(3) or § 1983." *Blue v. City of New York*, 2018 U.S. Dist. LEXIS 93509, *27 (S.D.N.Y. Jun. 4, 2018). Here, because the allegations stem from Defendants' employment by the City of Saratoga Springs, the doctrine bars the relief Plaintiffs seek.

Moreover, even if this were a legally viable claim, Plaintiffs fail to factually articulate any involvement by Ms. Dalton or Mr. Montagnino. A complaint is subject to dismissal where it

"contains only vague and conclusory allegations of a conspiracy and offers no specific explanation or example as to how defendants here conspired or acted together to deprive plaintiff of any purported right." *See Hunter v. Child. Protective Servs. of Niagara Cnty. CPS*, 2024 U.S. Dist. LEXIS 179252, *49 (W.D.N.Y. Jul. 18, 2024). Once again, other than simple conclusions that Plaintiffs draw, they fail to articulate a single fact alleging that Ms. Dalton or Mr. Montagnino participated in any conspiracy. Plaintiffs must factually plead four elements to their claim: the existence of a conspiracy; the intended purpose of depriving the plaintiffs of "equal protection of the laws, or of equal privileges and immunities under the laws"; "an act in furtherance of the conspiracy"; and damages. *United Bhd. of Carpenters & Jointers, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983). Beyond baseless conclusions, Plaintiffs allege nothing showing either the existence of a conspiracy or, importantly, any actions by Ms. Dalton or Mr. Montagnino even arguably intended to further a conspiracy. Indeed, Plaintiffs' cause of action relies upon their unsubstantiated legal conclusion: "Each defendant engaged in at least one overt act in furtherance of this conspiracy." (Compl. ¶ 470). As is well established, this fails to even arguably meet Plaintiffs' burden.

Lastly, as discussed, Plaintiffs fail to articulate any denial of equal protection because they fail to factually support their claim that they were discriminated against on the basis of race. Therefore, under any theory, this cause of action fails.

**J.    Elliott and Figuereo's Fifth Cause of Action for "Interference with Family Relationships" is not Pled Against Ms. Dalton or Mr. Montagnino.**

Elliott and Figuereo allege that all defendants interfered with their relationship by "falsely filing or causing to be filed knowingly false and baseless complaint(s) against plaintiffs Elliott and/or Figuereo with the New York State child protective services agency triggering an investigation into plaintiffs Elliott and/or Figuereo and their young children." (Compl. ¶ 475). This

claim is easily dispensed with because the only allegations made relative to this allegation are made against defendant Kelly. (Compl. ¶ 11). Thus, there are no allegations in this claim even asserted against Ms. Dalton and Mr. Montagnino.

**K.      Plaintiff Figuereo's Sixth Cause of Action for "Deprivation of Property" Fails.**

Plaintiff Figuereo's sixth claim is that all Defendants seized his cell phone "without any legal basis or justification" and then provided to the "FBI"[1] knowing that there would be an "unlawful forensic examination" of his phone. (Compl. ¶¶ 19, 478). This claim is devoid of merit. Much like the other claims, neither Ms. Dalton nor Mr. Montagnino is factually alleged to have taken a cell phone, to have given it to the FBI, or to have known of any "unlawful forensic examination" to be performed on the phone.

In any event, this claim is legally meritless. Initially, Figuereo's theory is unclear. If he is alleging that he was denied the ability to retrieve his phone (indeed, the Complaint does not clarify whether he was ever returned the phone), then the claim is effectively one for the denial of procedural due process. Yet, Plaintiff has not alleged such a claim, and even if he had, it would be meritless. "Deprivation of property by a state actor, whether done intentionally or negligently, will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.'" *Santos v. Syracuse Police Dep't*, 2022 U.S. Dist. LEXIS 206681, *12 (N.D.N.Y. Nov. 15, 2022) (quoting *Davis v. New York*, 311 Fed. Appx. 397, 400 [2d Cir. 2009]). Here, as recognized by federal courts, a claimant can recovery property that is unlawfully seized by bringing a state action for replevin or a petition pursuant to N.Y. C.P.L.R. Article 78 to recover such property. *See Boyle v. Kelley*, 42 N.Y.2d 88, 90-91 (1977). Thus, Figuereo had remedies

---

[1] The Complaint presumably is referring to the Federal Bureau of Investigation.

available to him to recover any such property under state law and, therefore, was foreclosed from bringing a claim related to the alleged wrongful seizure of his phone.

Figuereo, instead, seems to frame his claim as one for First and Fourth Amendment violation insofar as he believes that seizing a phone was a deliberate attempt to provide the phone to federal law enforcement. As for the First Amendment component, Figuereo pleads no facts showing involvement of Ms. Dalton or Mr. Montagnino. As for the Fourth Amendment claim, Figuereo makes nothing more than a "barebones allegation" that his phone was unlawfully seized, which "is insufficient to plead an unreasonable seizure." *See Harding v. Hould*, 2024 U.S. Dist. LEXIS 141944, \*\*17-18 (S.D.N.Y. Aug. 9, 2024). In any event, Figuereo admits that the phone was seized by police upon arrest (Figuereo concedes that a charge remains pending from that arrest), and "[a] police officer may seize personal effects discovered during a search incident to arrest if the officers find that these are evidence of criminal conduct, even if unrelated to that for which a suspect has been arrested." *U.S. v. Herron*, 18 F.Supp.3d 214, 223 (E.D.N.Y. 2014). And, again, this claim alleges no facts demonstrating personal involvement by Ms. Dalton or Mr. Montagnino in any alleged constitutional deprivations.

Lastly, insofar as this claim, much like the rest of this meritless complaint, relies on his belief that Defendants sought to intimidate him, this claim relies on rank speculation and characterizations that Figuereo does not even attempt to support via factual articulation. Thus, the claim fails.

**L.      Alternatively, as for the Claims against Mr. Montagnino Related to the Pending Disorderly Conduct Charge, the Court Should Abstain Pursuant to *Younger v. Harris*, 401 U.S. 37 (1971).**

As discussed, the allegations against Mr. Montagnino as alleged are wholly without merit. However, even if Plaintiff had adequately pled any constitutional violations with respect to the April 6, 2023, allegations, this Court should abstain based upon the fact that the underlying charges remain pending. The so-called *Younger* abstention doctrine "generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002). Where *Younger* abstention applies, "abstention is mandatory and its application deprives the federal court of jurisdiction in the matter." *Id.* at 197 (citing *Colorado Water Conserv. Dist. v. United States*, 424 U.S. 800, 816 n.22 [1976]). This includes criminal proceedings, because "ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Kugler v. Helfant*, 421 U.S. 117, 124 (1975).

By the Complaint's own allegations, the second claim against Mr. Montagnino relates to statements he allegedly made that support a pending criminal charge which the state court has declined to dismiss. Accordingly, this Court should abstain under the *Younger* doctrine from hearing any constitutional allegations related to that charge.

## CONCLUSION

For the foregoing reasons, defendants Robin Dalton and James Montagnino respectfully

ask that the Court grant their motion, and dismiss the Complaint against them.

Dated: November 8, 2024

WILSON, ELSER, MOSKOWITZ, EDELMAN &
DICKER, LLP

By:     s/ Andrew S. Holland
ANDREW S. HOLLAND
Bar Roll No. 517545
*Attorneys for defendants Robin Dalton and James*
*Montagnino*
200 Great Oaks Blvd., Suite 228
Albany, New York 12203
(518) 449-8893
andrew.holland@wilsonelser.com

24