**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SARATOGA BLACK LIVES MATTER, INC.; ALEXUS BROWN; MOLLY B. DUNN; GABRIELLE C. ELLIOTT; ALEXIS A. FIGUEREO; MARCUS FILIEN; CHANDLER M. HICKENBOTTOM; SAMIRA K. SANGARE; and TIEMOGO J. SANGARE; | **24-cv-865 (TJM)(CFH)** |

*Plaintiffs,*

v.

THE CITY OF SARATOGA SPRINGS; et al.,

*Defendants*

---

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS COLL AND SAFFORD'S
MOTIONS TO DISMISS**

---

COHEN&GREEN P.L.L.C.
J. Remy Green
Elena L. Cohen
1639 Centre St., Suite 216
Ridgewood, New York 11385
t: (929) 888-9480

GIDEON ORION OLIVER
277 Broadway, Suite 1501
New York, NY 10007
t: (718) 783-3682

LAW OFFICE OF MARK S. MISHLER, P. C.
744 Broadway
Albany, NY 12207
t: (518) 462-6753

June 9, 2025

## TABLE OF CONTENTS

TABLE OF CONTENTS ..........................................................................................................ii

TABLE OF AUTHORITIES ...............................................................................................iv

PRELIMINARY STATEMENT......................................................................................1

FACTUAL STATEMENT.................................................................................................2

     A.     General context and background on Saratoga's "official hostility" to BLM protesters and Plaintiffs in particular............................................................................2

     B.     Defendants Coll and Safford take office and continue that official hostility. ..........2

     C.     Saratoga's Demonstration and Parade Permitting Schemes. ......................................3

     D.     The previous mayor personally runs the unconstitutional, official hostility to Plaintiffs. ..............................................................................................................4

     E.     Plaintiffs hold a protest on May 1, 2024. ..................................................................5

     F.     Defendants twice levy unconstitutional charges against Plaintiff Figuereo in May 2024, including for protesting the first set of charges.................................................6

     G.     Defendant Coll continues to attempt to enforce the unconstitutional scheme. .......8

STANDARDS OF REVIEW.............................................................................................8

ARGUMENT ......................................................................................................................9

   I.     Plaintiffs' Official Capacity Claims are Well-Pled. ..................................................9

     A.     Defendants do not dispute that Plaintiffs' *Ex parte Young* injunctive claims are well pled. ........................................................................................................................10

B.    Saratoga has answered, and Defendants Coll and Safford do not appear to — and cannot — seek to dismiss the *Monell* claims. ..............................................................10

II.    Qualified Immunity Does Not Apply to Official Capacity Claims. ...............................12

III.    Plaintiff Figuereo's Personal Capacity Claim Against Safford are Plausible. ..................13

CONCLUSION...................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 US 662 (2008) ........................................................................................*passim*

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................................8

*Case, et al. v. City of N.Y., et al.,*
233 F.Supp.3d 372 (SDNY 2017) ........................................................................................8

*Ford Motor Co. v. Dep't of the Treas.,*
323 U.S. 459 (1945) ........................................................................................9

*Forsyth County v Nationalist Movement,*
505 US 123 (1992) ........................................................................................12

*Jackler v. Byrne,*
658 F.3d 225 (2d Cir. 2011) ........................................................................................12

*Kentucky v. Graham,*
473 U.S. 159 (1985) ........................................................................................9, 11

*Kentucky v Graham,*
473 US 159 (1985) ........................................................................................10, 11

*Lore v. City of Syracuse,*
670 F.3d 127 (2d Cir. 2012) ........................................................................................12

*Monell v. New York City Dept. of Social Services,*
436 U.S. 658 (1978) ........................................................................................1, 10, 11

*Monroe v. Pape,*
365 U.S. 167 (1961) ........................................................................................11

*Nieves v. Bartlett,*
139 S.Ct. 1715 (2019) ........................................................................................12

*In re NY City Policing During Summer 2020 Demonstrations,*
548 F.Supp.3d 383 (SDNY 2021) ........................................................................................8

*OSU Student Alliance v Ray,*
699 F3d 1053 (9th Cir 2012) ........................................................................................14

*Polk County v. Dodson,*
  454 U.S. 312 (1981) ..................................................................................................11

*Shamir v. City of N.Y.,*
  804 F.3d 533 (2d Cir. 2015) ......................................................................................8

*Tangreti v. Bachmann,*
  983 F.3d 609 (2d Cir. 2020) ....................................................................................13

*Tardif v. City of New York,*
  991 F.3d 394 (2d Cir. 2021) ......................................................................................9

*Villarreal v City of Laredo,*
  134 F.4th 273 (5th Cir 2025) (Oldman, J., concurring) ...........................................12

*Virginia Off. for Protection & Advocacy v Stewart,*
  563 US 247 (2011) ...................................................................................................10

*Ex parte Young,*
  209 U.S. 123 (1908) ..............................................................................................9, 10

*Zellner v. Summerlin,*
  494 F.3d 344 (2d Cir. 2007) ......................................................................................9

**Statutes**

Saratoga Springs City Ordinance §151 ..............................................................4, 5, 6, 8

Saratoga Springs City Ordinance §98-1 ............................................................3, 6, 7, 8

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) .......................................................................................................8

Fed. R. Civ. P. 12(b)(6) .....................................................................................................8

U.S. Const., amend. I..................................................................................................*passim*

## PRELIMINARY STATEMENT

Plaintiffs' complaint, often tracking the Attorney General's parallel investigation and findings of grave misconduct, seeks relief related to the City of Saratoga Springs's ("Saratoga") "official hostility" (First Amended Complaint ("FAC"), ECF No. 54, ¶ 13) towards Plaintiffs and others who advocate for racial justice. The complaint seeks both damages and equitable relief, including an injunction. *See* FAC at p. 107.[1] Though the complaint is broad, the pending motions to dismiss are narrow. Specifically, Plaintiffs have named current Commissioner of Public Safety Tim Coll in his official capacity and current Mayor of Saratoga John F. Safford in both his official and unofficial capacities. Coll seeks dismissal of the official capacity-only claims against him, while — without addressing the claims separately — Safford appears to seek dismissal of all claims. They move on slightly different grounds, and for convenience, Plaintiffs submit this consolidated opposition.

As set out below, much of both motion is premised on a mistaken reading of the complaint. In their official capacity claims, Plaintiffs seek largely injunctive relief. And at least for that relief, the lines of cases Defendants Coll and Safford cite do not apply, since what Plaintiffs seek is an injunction against an office that Defendants do not dispute (at least for the purpose of this motion) had a long-running pattern and practice of violating the Constitution. And for the official capacity damages claims, that is merely another way of saying *Monell* claims, and Saratoga has not moved to dismiss.

Meanwhile the individual capacity claims against Defendant Safford are well-pled: The FAC plausibly alleges he personally participated in violations of Plaintiffs' rights, notwithstanding his conclusory assertions otherwise. So, while (for example) Defendant Safford is correct that claims that sought unofficial capacity damages against him for time before he took office would "automatically fail," the FAC is not seeking such relief (*see, e.g.,* ECF No. 71-3 ("Safford Mot.") at 5) — and to the

---

[1] In this memo, pin-cites are to internal (e.g., not ECF) pagination. Additionally, all quotations have citations omitted, alterations adopted, and quotation marks omitted, unless specifically noted.

extent that was unclear from the FAC, Plaintiffs take this opportunity to clear that up.

## FACTUAL STATEMENT

Because of the narrow scope of the motion — particularly in relation to the broader, detailed facts — Plaintiffs have attempted to focus the factual statement below, and respectfully refer the Court to the full FAC and the Attorney General's report ("OAG 2024 Report," on the docket at ECF No. 55-1) about Saratoga's conduct for a fuller picture (if the Court decides that context is relevant).

### A. General context and background on Saratoga's "official hostility" to BLM protesters and Plaintiffs in particular.

Generally speaking, since 2020, Saratoga implemented an unconstitutional official municipal policy of retaliating against Saratoga Black Lives Matter (or "BLM") protesters based on the content of their speech and advocacy. As the OAG 2024 Report concluded, its actions were "caused by official hostility to the protesters and their message." OAG 2024 Report at 1; 19-23; FAC ¶¶ 11-13. Because neither Coll nor Safford appear to contest that Saratoga's conduct before they (e.g., Coll and Safford) took office was grievously unconstitutional, Plaintiffs (except for the small amount below) largely stop there for present purposes.

### B. Defendants Coll and Safford take office and continue that official hostility.

Before they'd taken office, another administration briefly ceased the official course of hostility towards Plaintiffs. However, on coming into office — with the OAG 2024 Report in hand — Coll and Safford immediately resumed the course. In May 2024, Coll and Safford — as the OAG put it — "resumed [Saratoga's] unconstitutional retaliation against protesters" including by charging Plaintiffs with "violations of Saratoga Springs ordinances that purportedly require individuals to give notice to the City before engaging in First Amendment-protected activity." FAC ¶ 23, citing OAG letter.

Coll and Safford personally participated in that decision. Unlike the larger departments and cities in the cases they cite, due to the small size of the Police Department, the command staff and

elected officials with control over the department, including, during their respective terms, defendants Stafford and Coll (2024), are involved in a detailed manner with the day-to-day operation, oversight, policy-making, and operational decision-making on behalf of defendant City relating to the work, practices, and functioning of the department.  FAC ¶ 87.  That is Saratoga has only approximately 70 police officers (close to 100% of whom are white).  FAC ¶ 86.

As for their responsibilities, at relevant times, Coll is and was a policy-maker for the City with oversight, supervisory responsibilities, and policy-making authority over the City of Saratoga Springs Police Department.  FAC ¶ 54.  Likewise, Safford is and was a policy-maker for the City with oversight, supervisory responsibilities, and policymaking authority over all aspects of the government of the City including the Saratoga Springs Police Department.  FAC ¶ 51.  As detailed below, it is a far cry from saying it is not plausible that those sitting atop the massive federal bureaucracy took part in individual, case-level decisions (e.g., Safford Mot. at 3-4) to say that it is implausible that the heads of a tiny department actually made decisions that — without dispute — were made.  Dozens of other potential decisionmakers could be identified below John Ashcroft and Robert Mueller in *Iqbal* (and the same is true for the New York City cases Defendants cite); here, Defendants cannot (or at least, do not) identify any.

### C.  Saratoga's Demonstration and Parade Permitting Schemes.

Saratoga Springs City Ordinance Chapter 98 (the "Demonstration Permitting Scheme") is a prior restraint on speech and expressive conduct protected by the First Amendment to the United States Constitution and the attendant provisions of the New York State Constitution that affords defendant City and its officials unbridled discretion to grant or deny permission to engage in a "demonstration." FAC ¶ 484.  And it has an expensive, ambiguous definition of the "demonstrations" is prohibits: "display, by 25 or more persons, in a public place that is intended to attract public attention."

3

Similarly problematic, the Demonstration Permitting Scheme contains no *mens rea* element and allows, on its face, defendant City and the officials charged with enforcing it to arrest, and prosecute, any perceived participant(s) in a "demonstration," regardless of their intent and state of mind. And it bans 22 items and activities, including holding any "banners", allowing protesters to "splinter" off from a main ground without *further* permits, wearing masks, and possessing most things made of wood. § 98-2.

Likewise, Saratoga Springs City Ordinance Chapter 151 (the "Parade Permitting Scheme") is a prior restraint on speech and expressive conduct protected by the First Amendment to the United States Constitution and the attendant provisions of the New York State Constitution that affords defendant City and its officials unbridled discretion to grant or deny permission to engage in a "parade." FAC ¶ 490. The definition of "parade" contained in the Parade Permitting Scheme is vague and overbroad. FAC ¶ 491. And like its Demonstration cousin, the Parade Permitting Scheme contains no *mens rea* element and allows, on its face, defendant City and the officials charged with enforcing it to arrest, and prosecute, any perceived participant(s) in a "demonstration," regardless of their intent and state of mind. FAC ¶

On its face, the Parade Permitting Scheme requires people who might want to organize or participate in a demonstration to comply with dozens of burdensome and chilling requirements, prohibitions, and restrictions on activities on the part of perceived organizers and participants, subjecting perceived organizers to liability – and even criminal penalties – for the potential conduct of "parade" participants. For example, the Parade Permitting Scheme prohibits 18 enumerated activities, including, but not limited to, the possession of "banners"; wearing face or gas masks; carrying "noxious material" and certain signs; carrying "obscene material"; "blocking" the sidewalk or interfering with traffic; and "breaking off" from "the main group to stage smaller demonstrations.

### D. Defendant Kelly, as mayor, personally ran the unconstitutional, official hostility to Plaintiffs.

Before Defendant Safford took office, Defendant Kelly was the mayor.  During her term, she — and the prior Commissioner of Public Safety, Defendant Dalton — were personally spearheading the efforts to unconstitutionally harass and arrest Plaintiffs.  Taking just those details substantiated in the OAG 2024 Report, the previous mayor's personal interventions included:

- "'Arrest all those motherfuckers.' Kelly texted, 'I hate these people,' and called for a Child Protective Service investigation of Lexis Figuereo, a Black Lives Matter leader" (OAG 2024 Report at 1);

- "Consistent with Kelly's instructions, an SSPD officer initiated a Child Protective Service investigation against the mother of Figuereo's children. That inquiry was unfounded, and all charges against the protesters were dismissed." (*id.*);

- "[I]n 2021, Dalton, Kelly, and Crooks implemented an unconstitutional official policy of retaliating against BLM protesters based on their speech" (*id.*);

- "Mayor Kelly also instructed Crooks to arrest protesters." (*id.* at 11);

- "Mayor Kelly told Crooks that BLM leader Molly Dunn 'crossed my line,' and Crooks responded that he had a plan 'in the works' to arrest Dunn early the next week" (*id.* at 18);

- "Three of Saratoga Springs's highest policymakers—Dalton, Kelly, and Crooks—made a series of decisions that deprived BLM protesters of their First Amendment rights" (*id.* at 19);

And all of this is in the context where "Kelly provided only limited compliance with the Attorney General's subpoena," messages were supposedly wiped on her City-issued phone, and she refused to appear for an oral examination.  *Id.* at 27.

### E.  Plaintiffs hold a protest on May 1, 2024.

On May 1, 2024, plaintiff Saratoga BLM – along with numerous other organizations – planned and held a rally in Saratoga Springs to show solidarity with the Palestinian people of Gaza, to call for a cease-fire in the war being conducted by Israel against the people of Gaza, and to express connections between the struggles of the Palestinian people for justice and the struggles of Black people in the U.S. for justice.  FAC ¶ 496.  As has been the case for every other rally or event in which Saratoga BLM, its members, or leaders have participated in since 2020, of which there have been dozens, this rally was peaceful.  FAC ¶ 497.  As has been the case for every other rally which Saratoga

BLM has organized or helped to organize in Saratoga Springs since 2020, of which there have been dozens, neither Saratoga BLM nor any other organization provided advanced notice to defendant City of the May 1st rally, nor did anyone seek advanced permission from defendant City to engage in this First Amendment protected activity.  FAC ¶ 498.

### F. Defendants twice levy unconstitutional charges against Plaintiff Figuereo in May 2024, including for protesting the first set of charges.

As Defendant Montagnino himself memorialized in a formal memorandum, "certain groups are routinely allowed to demonstrate and march in Saratoga Springs without having applied for, qualified for, or been granted parade permits."  FAC ¶¶ 501, 507.  Defendants Coll and Safford knew that fact very well.  FAC ¶¶ 502-503.  And indeed, the "Proud Boys" — perhaps as stark a political opposite to Plaintiffs as there is — were specifically not charged for violating the same laws used against Plaintiffs.  FAC ¶ 510.  Indeed, no other person has ever been charged under the Parade Permitting Scheme Defendants Coll and Safford used against Plaintiff Figuereo.  FAC ¶¶ 514-515. That is, Saratoga has *never* – prior to May 2024 – commenced charges against any individual or organization for allegedly organizing or holding a rally or demonstration or march in Saratoga Springs without having provided advanced notice to the City or seeking advanced permission from the City. FAC ¶ 500.

On or about May 20, 2024 Defendants charged Plaintiff Figuereo in two accusatory instruments relating to the May 1st event, charging plaintiff Figuereo, respectively, with allegedly violating Saratoga Springs City Ordinance §98-1(B) (purportedly mandating that no one can "hold or cause to be held any demonstration without first filing a declaration . . ." with the City in advance) and Saratoga Springs City Ordinance §151-5(A) (which says applications for "parades" should be filed with the Commissioner of Accounts.).  FAC ¶¶ 515-516.  These carried the potential for up to 15 days in jail.  FAC ¶ 517.  And even though many other organizations and individuals were involved in planning and organizing the May 1st protest, no other individual or organization has been charged with any

offense by the City or any other entity relating to the May 1st protest.  FAC ¶ 518.  Perhaps that was easy to predict:  Some of the other organizations involved in planning and organizing the May 1st event have memberships mostly made up of white people, as compared with Saratoga BLM, whose membership consists primarily of Black people and other people of color.  FAC ¶ 519.  Plaintiff Figuereo's charges appear to be the first ever levied under either of the Parade Permitting Scheme or the Demonstration Permitting Scheme.

In response to this unprecedented targeting of Saratoga BLM and plaintiff Figuereo for prosecution, which appears to be racially targeted as well as a continuation of the particular unconstitutional retaliation against Saratoga BLM, Saratoga BLM and numerous other organizations held a press conference and a march on May 25, 2024 to protest this latest action by the City and City officials to unjustifiably target, penalize, stigmatize, and harm Saratoga BLM and plaintiff Figuereo.  FAC ¶ 520.  And, again, as has been the case for every other rally in which Saratoga BLM has organized or helped to organize in Saratoga Springs since 2020, of which there have been dozens, neither Saratoga BLM nor any other organization provided advanced notice to defendant City of the May 25th event, nor did anyone seek advanced permission from defendant City to engage in this First Amendment protected activity.  FAC ¶ 522.

Again, Defendants levied charges:  On or about May 29, 2024, Defendants caused an accusatory instrument and an appearance ticket to be prepared charging plaintiff Figuereo with allegedly violating Saratoga Springs City Ordinance 98-1(B) relating to the May 25, 2024 march.  FAC ¶ 523.  Plaintiff Figuereo now has had the distinction of being the subject of the first *and* second ever prosecutions under the Demonstration Permitting Scheme.  Plus, once again, even though many other organizations and individuals were involved in planning and organizing the May 25th event, no other individual or organization has been charged with any offense by the City or any other entity relating to the May 25th event.  FAC ¶ 524.  And once again, some of the other organizations involved in

planning and organizing the May 1st event have memberships mostly made up of white people, as compared with Saratoga BLM, whose membership consists primarily of Black people and other people of color.  FAC ¶ 525.

In their small department, Defendants Coll and Safford necessarily participated in the scheme to charge Plaintiff Figuereo.  *See, e.g.,* FAC ¶ 87; ¶ 528.  Indeed, it is implausible that line-level officers made any relevant decision because the law had *never been used* before. FAC ¶¶ 500, 514-515.  Likewise, as detailed below, given Defendant Coll's personal attempts to demand compliance, it appears he is at least one of the driving forces in dusting off the never-used Schemes described above.

### G. Defendant Coll continues to attempt to enforce the unconstitutional scheme.

Defendant Coll continued to demand that Plaintiff Figuereo — and apparently only Plaintiff Figuereo in all of Saratoga — comply with the Parade Permitting Scheme and Demonstration Permitting Scheme.  He wrote counsel for Mr. Figuerero and Saratoga BLM, stating, in pertinent part: "I am informed that your client Mr. Figuereo, the leader of Saratoga BLM, may be part of organizing a demonstration to take place in the City of Saratoga Springs on March 27, 2025. I am respectfully requesting [counsel] to ask that Mr. Figuereo and/or other organizers that you are aware of, to complete and file a Demonstration Declaration with the City."  FAC ¶ 534.

### STANDARDS OF REVIEW

The applicable federal rules require only that a plaintiff plead "a short and plain statement of the claim" to entitle them to discovery.  *See* Fed. R. Civ. P. 8(a)(2); *see also, e.g., Shamir v. City of N.Y.,* 804 F.3d 533, 556 (2d Cir. 2015).  Under the familiar standard of review applicable to Defendants' partial motion to dismiss under Rule 12(b)(6), the Court must accept as true all plausibly pleaded allegations in the FAC and draw all reasonable inferences therefrom in Plaintiff's favor.  *See, e.g., See Case, et al. v. City of N.Y., et al.,* 233 F.Supp.3d 372, 382 (SDNY 2017) (citing cases). If the allegations in the pleadings sufficiently "raise the right to relief above the speculative level," dismissal is

inappropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

As the Second Circuit, and this Court, have recognized, allegations in other complaints or official reports can provide sufficient support for allegations. *See, e.g., In re NY City Policing During Summer 2020 Demonstrations*, 548 F.Supp.3d 383, 401-404 (SDNY 2021).

Finally, to the extent there are any disputed facts, they are for a jury to decide. *See, e.g., Zellner v. Summerlin*, 494 F.3d 344, 368, 371 (2d Cir. 2007) (citing cases). As long as there is enough factual matter to 'nudge[ plaintiffs'] claims…'across the line from conceivable to plausible,'" the case should proceed to discovery. *Ashcroft v. Iqbal*, 556 US 662, 680 (2008), *quoting Twombly*, 550 U.S. at 570.

## **ARGUMENT**

As set out below, Defendants Coll and Safford's motions do not show Plaintiffs' claims are implausible. Additionally, particularly given the lack of arguments in Defendant Safford, and to a lesser extent Defendant Coll's moving papers, neither Defendant may raise new arguments on this point in reply. *Tardif v. City of New York*, 991 F.3d 394, at 404 n.7 (2d Cir. 2021).

### I. **Plaintiffs' Official Capacity Claims are Well-Pled.**

Neither Defendant Coll nor Defendant Safford directly address the distinction between official capacity claims and personal capacity claims. This is stark in particular for Defendant Coll, since he only faces official capacity claims.[2] Official capacity claims generally take two forms: "damages actions against public officials" (*Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *cf., e.g., Ford Motor Co. v. Dep't of the Treas.*, 323 U.S. 459, 464 (1945) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."))

---

[2] For this reason, there are no punitive damages claims to dismiss against Defendant Coll, but Plaintiffs have no objection to the Court clarifying as much. *See* Coll Mot. at 16 (seeking dismissal of punitive damages theories).

or claims that use a legal fiction to permit injunctive relief even where there would otherwise be sovereign immunity (*Ex parte Young*, 209 U.S. 123 (1908)).

### A. Defendants do not dispute that Plaintiffs' *Ex parte Young* injunctive claims are well pled.

The *Ex Parte Young* legal fiction arises as an exception to Eleventh Amendment sovereign immunity. It applies when a "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Virginia Off. for Protection & Advocacy v Stewart*, 563 US 247, 255 (2011). And it "rests on the premise that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Id.* at 248.

Here, Plaintiffs seek prospective relief: "injunctive relief sufficient to protect plaintiffs from future, similar violations" of their rights. FAC at p. 107. And Defendants do not dispute — nor could they — that Plaintiffs allege an ongoing violation of federal law. Defendants Coll and Safford have firmly jumped on the bandwagon, and Coll has personally begun demanding that Plaintiffs — and apparently Plaintiffs alone among all people in Saratoga — get permits before engaging in First Amendment activity. *See, e.g.,* FAC ¶ 534. That violation sounds in the First Amendment, Due Process clause, and the Equal Protection Clause (at the least). *See also, e.g.,* n. 3, below. In short, Plaintiffs seek to have this "federal court command[]" Defendants Coll and Safford to "refrain from violating federal law." *Virginia Off.,* 563 U.S. at 248.

Since Defendants do not mount any argument otherwise, the Court should not dismiss the official capacity, *Ex parte Young* injunctive theories seeking relief against Defendants Coll and Safford.

### B. Saratoga has answered, and Defendants Coll and Safford do not appear to — and cannot — seek to dismiss the *Monell* claims.

Official capacity claims that seek damages "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,*

436 U.S. 658, 690, n. 55 (1978).  Such a suit "is, in all respects other than name, to be treated as a suit

against the entity." *Kentucky v Graham*, 473 US 159, 166 (1985).  Such claims are often shorthanded as

"*Monell* claims," because of their doctrinal progenitor.

> Official capacity and personal capacity damages claims are meaningfully different:
>
> On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *See, e. g., Monroe v. Pape*, 365 U.S. 167 (1961). More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a "'moving force'" behind the deprivation, *Polk County v. Dodson,* 454 U.S. 312, 326 (1981) (*quoting Monell, supra*, at 694); thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law

*Kentucky v Graham*, 473 US 159, 166 (1985) (citations left in).

Here, Saratoga has answered, not moved to dismiss.  ECF No. 72.  And any challenge to the

*Monell* claims here is Saratoga's, not Coll's or Safford's.  Indeed, neither Coll nor Safford's motion

attempts to engage with the *Monell* theory, or even cites *Monell*, likely because they are not seeking to

dismiss it.  While perhaps it does not spell things out at a granular level, the FAC is clear it is seeking

relief through *Monell* — as described in *Kentucky v. Graham* — "against the entity."  *See, e.g.*, FAC at pp.

99, 101, 104, 105.

This point may simply be ships passing in the night.  Plaintiffs do not seek individual damages

through their official capacity damages claims — only *Monell* damages against the entity.  *See, generally,*

*Kentucky*, 473 US at 165-168.  It may well be there is no dispute, and the parties agree that the only

official capacity claims are really only "another way of pleading an action against an entity of which an

officer is an agent."  *Monell*, 436 U.S. at 690, n. 55.  But to the extent that Coll and Safford purport

seek relief on these claims, they cannot receive it because Saratoga has not moved and the claims are

to "be treated as a suit against" Saratoga.  *Kentucky*, 473 US at 166.[3]  The *Monell* claims *are* the official capacity damages claims.

## II.  Qualified Immunity Does Not Apply to Official Capacity Claims.

Defendant Coll — and only Defendant Coll — argues he is entitled to qualified immunity.  Coll Mot. at 15.

But since Coll is only sued in his official capacity, there is no qualified immunity.  That is, "because a claim asserted against a government official in his official capacity is essentially a claim against the governmental entity itself, the defense of qualified immunity, which may be available to individual defendants as they are sued in their individual capacities, is not applicable to claims against them in their official capacities."  *Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011).

Put directly, "with respect to an official-capacity claim, qualified immunity is simply not a defense."  *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012).  Since Coll begins his motion acknowledging "Defendant Tim Coll" is only "sued in his official capacity" (Coll Mot. at 1), he necessarily acknowledges there is no qualified immunity to be had.

Even if that were not true, Coll's motion is wrong on the merits:  There is no "we wrote it down first" exception to violating clearly established law, and it was clearly established as of May 2024 (and indeed, long before then) that a prior restraint like the schemes here is unconstitutional.  *See, e.g., Forsyth County v Nationalist Movement*, 505 US 123, 131 (1992). Plus, even such requirements were generally lawful (they are not, and the one here is not[4]), this case easily falls into the exception where "officers have probable cause to make arrests, but typically exercise their discretion not to do so,"

---

[3] For this reason, Plaintiffs do not address Defendant Coll's underdeveloped arguments about the First Amendment, equal protection, malicious prosecution, and so on.  That is, these claims form the basis for seeking an injunction that runs against Saratoga, through Coll's official capacity, and since that means they must "be treated as [claims] against" Saratoga, the fact that Saratoga is not moving is dispositive.  *Kentucky*, 473 US at 166.

Meanwhile, Defendant Safford does not adopt or join Defendant Coll's arguments, so no further treatment is required.

[4] Indeed, as noted more broadly above, Saratoga itself has not filed a motion to claim the Parade Permitting and Demonstration Permitting Schemes are constitutional as a matter of law.

given the fact that (as alleged) against Plaintiff Figuereo are both the first and second times Saratoga has *ever* tried to enforce its permitting scheme. *Nieves v. Bartlett*, 139 S.Ct. 1715, 1727 (2019).[5] Coll does not get qualified immunity for attempting to enforce, *only* on one person, an obviously illegal law.

### III.  <u>Plaintiff Figuereo's Personal Capacity Claim Against Safford are Plausible.</u>

Plaintiff Figuereo — and only Plaintiff Figuereo — pleads individual capacity claims against Defendant Safford.[6]  A plaintiff "must directly plead and prove that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (adopting a new test, rejecting previous caselaw about supervisory liability).   Defendant Safford argues, in essence, that the FAC's allegations are not plausible insofar as it alleges he was personally involved in deciding to levy unlawful charges against Figuereo.  Safford Mot. at 3-5.  He does not argue ever that the charges were meritorious, *see e.g., id.* at 4, instead only arguing the text of the FAC does not provide enough facts to make it plausible he was involved.[7]

Safford's argument proves too much, because it relies too heavily on a misplaced analogy between the massive federal bureaucracy in *Iqbal* and Saratoga's small department.  *See, e.g.,* Safford Mot. at 4 ("allegation that John Ashcroft was 'principal architect' of policy of invidious discrimination and that Robert Mueller was 'instrumental' in implementing it were 'bare assertions' that were

---

[5] There is also a question of whether qualified immunity would apply to the non-split second decisions at issue here. *See, e.g., Villarreal v City of Laredo*, 134 F.4th 273, 281 (5th Cir 2025) (Oldman, J., concurring).  But that interesting question is for another day.

[6] Because of the number of parties (9 plaintiffs; 20 named defendants), incidents, and legal theories (not to mention individual vs. official capacity), the FAC did not break things out by each party against each other per incident per theory, since doing so would have added many more pages still to an already long complaint.  With that said, Plaintiffs want to make clear here that only intended to seek personal capacity liability against each Defendant for the incidents they were personally involved with (and in the capacity in which they were named) — and here, that means there are only individual capacity claims against Defendant Safford for his conduct in and around the May 2024 charges against Plaintiff Figuereo.

[7] By contrast, Defendant Coll seems to accept the allegation of personal participation as plausible. *Cf., e.g.,* Coll Mot. at 12 (arguing there was "probable cause for defendant Coll to have believed it appropriate to decide to have these charges levied against plaintiff Figuereo," but seeming to concede Coll was involved in the decision).  Instead, he defends the substance of his participation — which, for reasons explained above, is not ultimately his argument to make because the claims against him are purely official capacity.

conclusory and not entitled to be assumed true on a motion to dismiss"). *Iqbal* itself emphasizes that "determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v Iqbal*, 556 US 662, 663-664 (2009). And common sense can ratchet both ways. As the Ninth Circuit described it:

> "Tthe small scope of Martorello's operation matters. It is one thing to allege that, because some low-level government officers engaged in purposeful discrimination, a cabinet-level official must also have engaged in purposeful discrimination. But it is another thing to say that the director of a university facilities department had a hand in the unconstitutional manner in which his employees enforced a department-wide policy. The second claim is plausible."

*OSU Student Alliance v Ray*, 699 F3d 1053, 1077 (9th Cir 2012).

So too here. Just as it is not plausible (without more) that the Attorney General himself is stepping out of the chain of command to make individual decisions that the basic structure of the federal government allocates to line-level employees, it *is* plausible that a mayor in a small department does not use middle managers to make the kind of decisions alleged here. And it *is* plausible that after the previous administration ran things in a system where "[t]hree of Saratoga Springs's highest policymaker—Dalton, Kelly, and Crooks—made a series of decisions that deprived BLM protesters of their First Amendment rights" (OAG 2024 Report at 19), those who took over their offices did not suddenly stop having any personal involvement in the same kinds of decisions. Indeed, it is frankly hard to imagine that, after the OAG 2024 Report, line-level Saratoga employees would continue to harass Plaintiffs absent sign off from Safford — particularly because the OAG 2024 Report threated a suit seeking monitoring, in the absence of an agreed upon supervision; and because an intervening administration ceased the unconstitutional conduct, only for it to resume at the apparent direction of Defendant Safford on taking office.

Beyond that, there is the fact that, in 2024, Defendants decided to deploy Saratoga's never-before-used Permitting Schemes against Plaintiff Figuereo — and the FAC plausibly alleges that Safford's personal participation because of basic, background facts about Saratoga's government. *See,*

*e.g.,* FAC ¶ 87; ¶ 528.  Anyone else suddenly making that decision, without Safford's final say-so, is implausible.  Plus, Safford's doing so would be quite consistent with how the previous "decisions that deprived BLM protesters of their First Amendment rights" (OAG 2024 Report at 19) were made in Saratoga.  Indeed, it is "common sense," *Iqbal*, 556 US at 663-664, that such a radical change in the application of the law would *need* to come from higher up — not lower down.

Far from conclusory, Plaintiffs have met the "context-specific" task of pleading personal participation, drawing on "experience" in the form of Saratoga's history in how it has made similar decisions "and common sense."  *Iqbal*, 556 US at 663-664.  Defendant Safford's motion should be denied.

## CONCLUSION

For all the reasons discussed above, Plaintiffs respectfully request that the Court deny the pending motions.

Dated:      June 9, 2025
            Queens, New York

Respectfully Submitted,

**COHEN&GREEN P.L.L.C.**

/s/
_____

**BY:**    J. Remy Green
           Elena L. Cohen

           1639 Centre Street, Suite 216
           Ridgewood, NY 11385
           (929) 888-9480
           elena@femmelaw.com
           remy@femmelaw.com

MARK S. MISHLER, ESQ.
Bar roll # 102213

/s/
_____

           Law Office of Mark S.
           Mishler, P. C. 744
           Broadway
           Albany, NY 12207
           (518-462-6753
           mishlerlaw@gmail.com

**GIDEON ORION OLIVER**

_____/s/_____
           277 Broadway, Suite 1501
           New York, NY  10007
           t: 718-783-3682
           f: 646-349-2914
           Gideon@GideonLaw.com

*Attorneys for Plaintiffs*

16