UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

SARATOGA BLACK LIVES MATTER, INC.,
et al.,

                              Plaintiffs,

          v.                                                    1:24-cv-00865 (AMN/PJE)


THE CITY OF SARATOGA SPRINGS, et al.,


                              Defendants.

_____

**APPEARANCES:**                                    **OF COUNSEL:**

**LAW OFFICE OF MARK S. MISHLER, PC**    **MARK S. MISHLER, ESQ.**
744 Broadway – 2nd Floor
Albany, New York 12207


**COHEN & GREEN P.L.L.C.**                    **ELENA L. COHEN, ESQ.**
1639 Centre Street – Suite 216               **REMY GREEN, ESQ.**
Ridgewood, New York 11385


**GIDEON ORION OLIVER,**                    **GIDEON ORION OLIVER, ESQ.**
**ATTORNEY AT LAW**
277 Broadway – Suite 1501
New York, New York 10007
*Attorneys for Plaintiffs*


**SMITH, SOVIK, KENDRICK**                    **KAREN G. FELTER, ESQ.**
**& SUGNET, P.C.**
250 South Clinton Street – Suite 600
Syracuse, New York 13202
*Attorneys for Defendant the City of*
*Saratoga Springs*


**MORRIS DUFFY ALONSO**                    **FRANK HUMPHREY FOSTER, ESQ.**
**FALEY & PITCOFF**
101 Greenwich Street – 22nd Floor
New York, New York 10006
*Attorneys for Defendant John F. Safford*

**GOLDBERG SEGALLA, LLP**
8 Southwoods Boulevard – Suite 300
Albany, New York 12211
*Attorneys for Defendant Meg Kelly*

**JONATHAN M. BERNSTEIN, ESQ.**

**BURKE, SCOLAMIERO LAW FIRM**
7 Washington Square
Albany, New York 12205
*Attorneys for Defendant Tim Coll*

**JUDITH B. AUMAND, ESQ.**
**KEVIN P. BURKE, ESQ.**

**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP**
200 Great Oaks Boulevard – Suite 228
Albany, New York 12203
*Attorneys for Defendant Robin Dalton and
James Montagnino*

**ANDREW S. HOLLAND, ESQ.**
**PETER A. LAURICELLA, ESQ.**

**FITZGERALD MORRIS BAKER
FIRTH, P.C.**
68 Warren Street
Glens Falls, New York 12801
*Attorneys for Defendants Tyler McIntosh,
Shane L. Crooks, John T. Catone, Robert Jillson,
Timothy Sicko, Andrew Streim, Paul Veitch,
Megan Davenport, John Guzek, Matthew Miller,
Steven Reside, Glenn A. Barrett, William Coyner,
and Yevgeniy Khutoryanskiy*

**COREY A. RUGGIERO, ESQ.**
**JOHN D. ASPLAND, ESQ.**

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION & ORDER**

## I.    INTRODUCTION

On July 10, 2024, Alexus Brown, Molly B. Dunn, Gabrielle C. Elliott, Alexis A. Figuereo, Marcus Filien, Chandler M. Hickenbottom, Samira K. Sangare, Tiemogo J. Sangare (together, "Individual Plaintiffs"), and Saratoga Black Lives Matter, Inc. ("Saratoga BLM"), (collectively, "Plaintiffs") filed a complaint against Mayor John F. Safford; former Mayor Meg Kelly; Commissioner of Public Safety Tim Coll; former Commissioners of Public Safety Robin Dalton and James Montagnino; Chief of Police Tyler McIntosh; former Chief of Police Shane L. Crooks;

2

former Assistant Chief of Police John T. Catone; Lieutenant Robert Jillson; Sergeants Timothy Sicko, Andrew Streim, and Paul Veitch; Investigators Megan Davenport, John Guzek, Matthew Miller, and Steven Reside; Officers Glenn A. Barrett, William Coyner, and Yevgeniy Khutoryanskiy; John Does 1-100 (together, "Individual Defendants"); and the City of Saratoga Springs (the "City"), (collectively "Defendants").  Dkt. No. 1.  On April 7, 2025, Plaintiffs filed an amended complaint alleging violations of their constitutional rights pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) in connection with certain actions taken in response to Plaintiffs' organizing and advocacy-related activities from July 14, 2021 though the present.  *See* Dkt. No. 54 ("Amended Complaint").  Presently before the Court are two separate motions to dismiss filed by Defendants Coll and Safford pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motions").  *See* Dkt. Nos. 70, 71.  Plaintiffs responded to the Motions, *see* Dkt. No. 82, and each of the moving Defendants filed replies.  *See* Dkt. Nos. 84, 85.[1]

For the reasons set forth below, the Court grants Defendants' Motions.

## I.    BACKGROUND

Unless otherwise noted, the following facts are drawn from the Amended Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record. *Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

### A.  Overview

The Court assumes the parties' familiarity with the facts underlying this case.  Plaintiffs allege that Defendants have violated their constitutional rights based on their response to the

---

[1] This case was reassigned to the undersigned on January 30, 2026.  *See* Dkt. No. 90.

organizing and advocacy efforts of Saratoga BLM and the Individual Plaintiffs from July 14, 2021 through the present. *See* Dkt. No. 54 at ¶¶ 1, 5. For purposes of this Memorandum-Decision and Order, the Court will summarize the factual allegations set forth in the Amended Complaint, with a particular focus on the facts beginning in January 2024, the time at which both moving Defendants took office.

### B. The Parties

Saratoga BLM is a not-for-profit corporation organized under the laws of New York that was formed in 2020 with the purpose of organizing and advocating in and around the City regarding issues of racism, police brutality, accountability for acts of police misconduct, and justice. *Id.* at ¶ 36. The Individual Plaintiffs are residents of New York and have been active participants in the organizing and advocacy work of Saratoga BLM since 2020. *Id.* at ¶¶ 42-49.

The City is a municipal corporation formed under the laws of New York with its principal place of business in Saratoga Springs, New York. *Id.* at ¶ 50. The City employs all Individual Defendants, including all John Doe defendants. *Id.*

Defendant Safford is the current mayor of the City; he took office in January 2024. *Id.* at ¶ 51. As a member of the City Council and policy-maker, Defendant Safford has oversight, supervisory responsibilities, and policy-making authority over all aspects of the City government, including the City's Police Department. *Id.* Defendant Kelly is a former mayor of the City, who served as mayor from 2018 to 2021. *Id.* at ¶ 53. During her tenure as mayor, Defendant Kelly had oversight, supervisory responsibilities, and policy-making authority over all aspects of the City government, including the City's Police Department. *Id.*

Defendant Coll is the City's current Commissioner of Public Safety; like Defendant Safford, he took office in January 2024. *Id.* at ¶ 54. As a member of the City Council and policy-

maker, Defendant Coll has oversight, supervisory responsibilities, and policy-making authority over the City's Police Department. *Id.* Defendants Dalton and Montagnino are former Commissioners of Public Safety of the City, serving as Commissioner from 2020 to 2021, and from 2022 to 2023, respectively. *Id.* at ¶¶ 55-56. During their tenures as Commissioner, Defendants Dalton and Montagnino had oversight, supervisory responsibilities, and policy-making authority over the City's Police Department. *Id.*

Defendant McIntosh is the current Chief of Police; he took office in 2023. *Id.* at ¶ 57. Prior to assuming his role as Chief, Defendant McIntosh was a supervisory officer within the City's Police Department. *Id.* In both roles, Defendant McIntosh had oversight, supervisory responsibilities, and policy-making authority over the City's Police Department. *Id.* Defendant Crooks was a former Chief of Police, who served as Chief from 2019 to 2023. *Id.* at ¶ 59. Defendant Catone is a former Assistant Chief of Police, who served as Assistant Chief between 2013 and 2022. *Id.* at ¶ 60. During their tenures, Defendant Crooks and Catone had oversight, supervisory responsibilities, and policy-making authority over the City's Police Department. *Id.* at ¶¶ 59-60.

Regarding the Individual Defendants employed by the City's Police Department: Defendant Jillson was a Lieutenant for a period of years, including in 2021, *see id.* at ¶ 61; Defendants Sicko and Veitch were Sergeants for a period of years, including in 2021, *see id.* at ¶¶ 62, 64; Defendant Davenport was an Investigator for a period of years, including in 2023, *see id.* at ¶ 65; Defendants Guzek and Miller were also Investigators for a period of years, including in 2021, *see id.* at ¶¶ 66-67; Defendant Barrett was a police officer for a period of years, including in 2023, *see id.* at ¶ 69; Defendants Coyner and Khutoryanskiy were also police officers for a period of years, including in 2021, *see id.* at ¶¶ 70-71; and Defendant Streim is a Sergeant and Defendant

Reside is an Investigator as of the date of the filing of the Amended Complaint. *See id.* at ¶¶ 63, 68.

Lastly, John Doe Defendants 1-100 represent police officers or officials of the City who either directly participated in violating the constitutional rights of one or more of the Plaintiffs from July 14, 2021 to the present, or who failed to intervene to prevent the violation of one or more of the Plaintiffs' constitutional rights during this period. *Id.* at ¶ 72.

### C. The City's Parade and Demonstration Ordinances[2]

City of Saratoga Springs Ordinance § 151 (the "Parade Ordinance") defines a parade as "any procession of any kind in a public place in the City of Saratoga Springs that is intended to attract public attention and that does not comply with normal traffic regulations and control."   Dkt. No. 71-2 at 6.[3]  The Parade Ordinance further provides that "[a]pplications for [a parade] permit shall be made to the Commissioner of Accounts on the forms provided by the Commissioner" and must be filed with the Commissioner of Accounts "not less than 30 days before the date on which it is proposed to conduct the parade." *Id.* at 9.

City of Saratoga Springs Ordinance § 98 (the "Demonstration Ordinance") defines demonstration as "a display, by 25 or more persons, in a public place that is intended to attract public attention." *Id.* at 1.  The Demonstration Ordinance further provides that "[n]o person, corporation, partnership or other entity shall hold or cause to be held any demonstration without

---

[2] On a motion to dismiss, courts may consider matters of which judicial notice may be taken. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).  Here, the Court takes judicial notice of the City's Parade Ordinance and Demonstration Ordinance. *See 33 Seminary LLC v. City of Binghamton*, No. 11-cv-1300, 2012 WL 12888394, at *6 (N.D.N.Y. Apr. 19, 2012) (noting that the Court may take judicial notice of provisions of a Town or City Code) (citation omitted).

[3] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

first filing a declaration where required by this chapter." *Id.* Any persons who are holding a permit for a parade are not required to file a declaration. *Id.* "Application for a demonstration declaration shall be made to the Commissioner of Accounts on the forms provided by the Commissioner." *Id.* at 5.

A violation of either ordinance is punishable by up to fifteen days in jail, a fine of up to $250, or both. Dkt. No. 54 at ¶ 517.

**D. Events of May 1, 2024**

On May 1, 2024, Saratoga BLM, alongside other organizations, planned and held a peaceful rally[4] in the City "to show solidarity with the Palestinian people of Gaza, to call for a cease-fire in the war being conducted by Israel against the people of Gaza, and to express connections between the struggles of the Palestinian people for justice and the struggles of Black people in the [United States] for justice." *Id.* at ¶¶ 496-497. None of the organizations, including Saratoga BLM, sought permission from the City or provided advance notice to the City of the rally. *Id.* at ¶ 498. According to Plaintiffs, numerous other organizations have held rallies or marches in the City without seeking permission or providing advance notice to the City, both prior to and since 2020. *Id.* at ¶ 499.[5] Moreover, on information and belief, prior to May 2024, the City had never commenced charges against any individual or organization for allegedly organizing or holding a rally, demonstration, or march in the City without seeking permission from or providing advance

---

[4] Plaintiffs refer to the events that took place on May 1, 2024 interchangeably as a "rally" and a "protest." *Compare* Dkt. No. 54 at ¶ 496 *with id.* at ¶ 518.

[5] For example, Plaintiffs allege that on August 5, 2023, the "Proud Boys" violated both the Demonstration Ordinance and Parade Ordinance. Dkt. No. 54 at ¶ 504. In a memo dated August 7, 2023, Defendant Montagnino recommended enforcing the Demonstration Ordinance and Parade Ordinance against the organizers and participants of the August 5, 2023 demonstration, expressing concern that the lack of enforcement may be met with a claim of selective prosecution. *Id.* at ¶¶ 507-509. However, the "Proud Boys" ultimately were not charged with violations of either ordinance. *Id.* at ¶ 510.

notice to the City.  *Id.* at ¶ 500.

On May 20, 2024, the City, acting through Defendant Streim, charged Plaintiff Figuereo with allegedly violating the Demonstration Ordinance and Parade Ordinance.  *Id.* at ¶ 515. The following day, the City, acting through Defendant Streim, prepared and served appearance tickets directing Plaintiff Figuereo to appear in City Court regarding the charges.  *Id.* at ¶ 516.  Despite the involvement of other organizations and individuals in the planning and organizing of the rally on May 1, 2024, according to Plaintiffs, no other individual or organization was charged by the City with any offense related to the rally on May 1, 2024.  *Id.* at ¶ 518.

### E.  Events of May 25, 2024

On May 25, 2024, Saratoga BLM and other organizations held a press conference and march to peacefully protest the City's actions against Saratoga BLM and Plaintiff Figuereo.  *Id.* at ¶¶ 520-521.  None of the organizations, including Saratoga BLM, sought permission from the City or provided advance notice to the City of the march.  *Id.* at ¶ 522.  On May 29, 2024, the City, acting through Defendant Reside, charged Plaintiff Figuereo with allegedly violating the Demonstration Ordinance in connection with the march on May 25, 2024.  *Id.* at ¶ 523.  Again, despite the involvement of other organizations and individuals in the planning and organizing of the events on May 25, 2024, according to Plaintiffs, no other individual or organization was charged by the City with any offense related to the events that took place on May 25, 2024.  *Id.* at ¶ 524.

Plaintiffs allege that the commencement and prosecution of these charges against Plaintiff Figuereo was the direct consequence of decisions made by the City and Defendants Safford, Coll, and McIntosh, *see id.* at ¶ 528, and that their decision to charge Plaintiff Figuereo with these violations was carried out by Defendants Streim and Reside, and was intended to "intimidate,

isolate, stigmatize, penalize, and retaliate against Saratoga BLM, [P]laintiff Figuereo, and the other [individual] [P]laintiff leaders of Saratoga BLM, for their exercise of First Amendment protected rights[.]" *Id.* at ¶ 529.

Beginning in 2021, the New York State Office of the Attorney General ("OAG") conducted an investigation into the City's response to certain Black Lives Matter protest activities organized or supported by Saratoga BLM, which culminated in a report issued on February 20, 2024. *Id.* at ¶¶ 8, 10; *see also* Dkt. No. 55-1. In the report, the OAG concluded that in 2021, Defendants Dalton, Kelly and Crooks "implemented an unconstitutional official policy of retaliating against [Saratoga] BLM protestors based on their speech." Dkt. No. 55-1 at 4. Then, on June 13, 2024, the OAG issued a letter to the City's attorneys attaching a draft assurance of discontinuance in an effort to resolve the OAG's pending constitutional claims against the City. *See* Dkt. No. 55-2. In its letter, the OAG expressed concern that the City "has resumed its unconstitutional retaliation against protestors" in light of its issuance of appearance tickets to Plaintiff Figuereo in May 2024, and stated that the OAG's proposed assurance of discontinuance "would prohibit the [City's Police Department] from seeking criminal penalties against protesters in such circumstances—where there was no reported violence or significant property damage." *Id.* at 2-3; *see also* Dkt. No. 54 at ¶ 532.

**F. The Motions**

Plaintiffs bring claims pursuant to Section 1983 against all Defendants alleging violations of Plaintiffs' constitutional rights under the First Amendment, Fourth Amendment, Fifth Amendment, and Fourteenth Amendment. *See* Dkt. No. 54 at 97-107. Plaintiffs also bring a separate conspiracy claim pursuant to Section 1985(3) against all Defendants. *Id.* at 103-104.

On May 5, 2025, Defendant Safford filed a motion to dismiss, contending that the Amended

Complaint must be dismissed as against him pursuant to Rule 12(b)(6) because the Amended Complaint fails to state a claim against him, as Defendant Safford took office as Mayor after the vast majority of the alleged conduct took place, and there are no non-conclusory factual allegations indicating that Defendant Safford personally participated in the alleged events that occurred during his tenure as Mayor.  Dkt. No. 71-3 at 6-8.

Defendant Coll also filed a motion to dismiss on May 5, 2025.  Dkt. No. 70.  Defendant Coll contends that the Amended Complaint must be dismissed as against him pursuant to Rule 12(b)(6) because it fails to state a claim against him, and in the alternative, he is entitled to qualified immunity.  Dkt. No. 70-1 at 13-22.[6]

## II.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  This presumption, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the

---

[6] Defendant Coll further contends that, should the Court find that Plaintiffs have sufficiently pled causes of action against him, the Court should dismiss Plaintiffs' claim for punitive damages.  *See* Dkt. No. 70-1 at 22.

claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (internal quotation marks omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

## III.    DISCUSSION

The only constitutional violations that Plaintiffs allege to have occurred after both Defendants Safford and Coll took office in January 2024 relate to the charges issued against Plaintiff Figuereo on May 20, 2024 and May 29, 2024 for violating the Parade Ordinance and Demonstration Ordinance in connection with the rally and march that took place on May 1, 2024 and May 25, 2024, respectively. *See* Dkt. No. 54 at ¶¶ 515, 523.

### A.  Defendant Coll

As an initial matter, Defendant Coll is sued only in his official capacity. *See id.* at 1; Dkt. No. 82 at 6, 18 n.7. "[T]his District has held that claims against municipal officers in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant." *Sears v. Carmichael*, No. 18-cv-909, 2018 WL 7291417, at *2

(N.D.N.Y. Aug. 6, 2018) (internal citations and quotation marks omitted), *report and recommendation adopted*, 2019 WL 587587 (N.D.N.Y. Feb. 13, 2019); *see also In re New York City Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 408-09 (S.D.N.Y. 2021) (noting that "courts in the Second Circuit routinely dismiss official capacity claims against municipal officials as duplicative of the claims against the municipality").  Since Plaintiffs also name the City as a defendant in this action, Plaintiffs' claims against Defendant Coll in his official capacity are redundant of their claims against the City.  Accordingly, the Court dismisses Plaintiffs' claims against Defendant Coll in his official capacity with prejudice.

**B.  Defendant Safford**

The Court now turns to Plaintiffs' claims against Defendant Safford, who is sued only in his individual capacity.  *See* Dkt. No. 54 at ¶ 52; Dkt. No. 82 at 18, 18 n.6.[7]

**1.  Section 1983**

"It is well-settled that, to establish a defendant's individual liability in a suit brought under Section 1983, a plaintiff must show 'the defendant's personal involvement in the alleged constitutional deprivation.'"  *Enders v. Boone*, 658 F. Supp. 3d 70, 90 (N.D.N.Y. 2023) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted)), *aff'd sub nom. Siano Enders v. Boone*, No. 23-823, 2024 WL 3518058 (2d Cir. July 24, 2024).  A plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).  "Pursuant to this requirement, a Section 1983 plaintiff must allege a tangible connection between the acts of the defendant and the injuries suffered."  *Keyes v.*

---

[7] To the extent that Plaintiffs bring a Section 1985(3) claim against Defendant Safford in his individual capacity, such claim would also fail for the reasons set forth in *infra* Section III(B)(2).

*Venettozzi*, No. 18-cv-372, 2022 WL 991402, at \*6 (N.D.N.Y. Mar. 31, 2022) (citation and internal quotation marks omitted).  In other words, "the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained." *Durr v. Slator*, 558 F. Supp. 3d 1, 20 (N.D.N.Y. 2021) (citations omitted).

Additionally, "[p]ersonal involvement of a supervisor may be established by direct participation in a constitutional violation or by showing that he created a policy or custom under which the violation occurred." *Rindgen v. Cnty. of Broome*, No. 24-cv-1325, 2025 WL 2772080, at \*17 (N.D.N.Y. Sept. 29, 2025) (internal quotation marks and citation omitted); *see also Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 416 (E.D.N.Y. 2023) ("Post-*Tangreti*, district courts in the Circuit have determined that personal involvement still may be established for a supervisory defendant if he or she 'created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom.'") (collecting cases).  However, "conclusory allegations that a defendant was involved in the creation and enforcement of unconstitutional policies cannot sustain a claim of personal involvement." *Rindgen*, 2025 WL 2772080, at \*17 (citation omitted).

Thus, Plaintiffs must allege facts suggesting that Defendant Safford planned, directed, or authorized the issuance of charges against Plaintiff Figuereo himself, or that he created or maintained policies which led to the issuance of charges against Plaintiff Figuereo.

Plaintiffs allege that the charges brought against Plaintiff Figuereo were "filed by or at the instigation or direction of" numerous Defendants—namely, Defendants Safford, Montagnino, Coll, McIntosh, Barrett, Streim, and Reside—and that on information and belief, the prosecution of Plaintiff Figuereo "was the direct consequence of decisions made by" Defendants Safford, Coll, McIntosh, and the City.  Dkt. No. 54 at ¶¶ 17, 528.  These allegations are unsupported by any

13

specific facts, and thus insufficient to plausibly allege Defendant Safford's personal involvement with respect to Plaintiff Figuereo's alleged constitutional violations. *See, e.g.*, *R.M. v. City of New York*, No. 24-cv-3001, 2024 WL 4149870, at *2-3 (S.D.N.Y. Sept. 11, 2024) (dismissing Section 1983 claims against individual government employees where plaintiff did not allege any facts showing how they were personally involved in the events underlying her claims); *Stoutenger v. City of Fulton*, 605 F. Supp. 3d 432, 457 (N.D.N.Y. 2022) (finding that plaintiff's allegations that the mayor "has been and continues to be deliberately indifferent to the ongoing unconstitutional acts described . . . and grossly negligent in supervising those under her" are insufficient to allege the mayor's personal involvement); *Thomas v. City of New York*, No. 24-cv-2534, 2025 WL 1233184, at *4 (S.D.N.Y. Apr. 29, 2025) (dismissing Section 1983 claims against mayor because plaintiff put forth no allegations that the mayor was personally involved in the alleged violations, including providing no indication that the mayor was aware of the incident); *Blond v. City of Schenectady*, No. 10-cv-0598, 2010 WL 4316810, at *4 (N.D.N.Y. Oct. 26, 2010) (dismissing Section 1983 claims against mayor and chief of police because plaintiff did not allege any facts plausibly indicating that either defendant was personally involved in any alleged constitutional violations arising from plaintiff's arrest, incarceration, or prosecution).

Moreover, while Plaintiffs allege that the decision to charge Plaintiff Figuereo "constitutes official City policy to unconstitutionally interfere with and penalize" Plaintiffs for the exercise of their First Amendment rights, *see* Dkt. No. 54 at ¶ 531, Plaintiffs do not allege that Defendant Safford created or maintained any policy under which unconstitutional practices occurred. *See Meli v. City of Burlington, Vt.*, 585 F. Supp. 3d 615, 638 (D. Vt. 2022) ("[W]hile a supervisor cannot be found liable alone 'by reason of . . . [his] supervision of others who committed the violation,' it seemingly remains possible for a policy maker to be held liable for their creation or

14

continuance of an unconstitutional policy or custom." (quoting *Tangreti*, 983 F.3d at 619)).

Instead, Plaintiffs allege generally that Defendant Safford, along with the other named Defendants

holding leadership positions within the City, is involved "with the day-to-day operation, oversight,

policy-making, and operational decision-making . . . relating to the work, practices, and

functioning of the [Police] [D]epartment" due to the small size of the Police Department. Dkt. No.

54 at ¶ 87. Even assuming *arguendo* that Plaintiffs did identify such a policy created or maintained

by Defendant Safford, pleading a supervisor's personal involvement through policy creation or

maintenance requires a plaintiff to plausibly allege "that [i] the official was responsible for the

policy and [ii] a 'tangible connection between their policymaking conduct and the alleged harm.'"

*Robinson v. Phillips*, No. 22-cv-945, 2023 WL 3170389, at *2 (N.D.N.Y. May 1, 2023) (quoting

*Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 322 (N.D.N.Y. 2023)). Here, the Amended

Complaint lacks sufficient facts to demonstrate a tangible connection between Defendant Safford's

policymaking conduct and Plaintiff Figuereo's alleged constitutional injury. *See Taranto v. Putnam

Cnty.*, No. 21-cv-2455, 2023 WL 6318280, at *14 (S.D.N.Y. Sept. 28, 2023) (finding that

conclusory allegations that a defendant created a policy are not enough to plausibly allege personal

involvement).

 For these reasons, Plaintiffs fail to sufficiently allege that Defendant Safford was personally

involved as a direct participant or as responsible policymaker in the issuance of charges against

Plaintiff Figuereo. Accordingly, the Court dismisses Plaintiffs' Section 1983 claims as to

Defendant Safford.[8]

---

[8] To the extent that Plaintiffs bring Section 1983 claims against Defendant Coll in his individual capacity, such claims would also fail. Plaintiffs put forth identical allegations with respect to Defendants Safford and Coll, *see* Dkt. No. 54 at ¶¶ 17, 22, 87, 528-531, with the exception of one additional allegation regarding Defendant Coll. Plaintiffs allege that Defendant Coll wrote to counsel for Plaintiff Figuereo and Saratoga BLM on March 24, 2025, explaining that he was

### 2. Section 1985(3)

Plaintiffs also fail to plead facts that would plausibly state a claim under Section 1985(3) as to Defendant Safford. "A conspiracy claim under Section 1985(3) requires a plaintiff to allege: '1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006) and citing 42 U.S.C. § 1985(3)). For purposes of Section 1985, a "conspiracy" requires "a plurality of actors committed to a common goal." *Hamza v. Kotsidis*, No. 25-cv-968, 2025 WL 3295404, at *27 (N.D.N.Y. Nov. 26, 2025). "The conspiracy must also be 'motivated by some racial or . . . class-based, invidious discriminatory animus.'" *Dolan*, 794 F.3d at 296 (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)).

Here, Plaintiffs' Amended Complaint contains only conclusory allegations of a conspiracy. Plaintiffs allege generally that Defendants conspired to deprive Plaintiffs "of the equal protection of the laws or of the equal privileges and immunities under the law" and that "[e]ach Defendant engaged in at least one overt act in furtherance of the conspiracy." Dkt. No. 54 at ¶¶ 411-412. Vague, conclusory, or general allegations of a conspiracy are insufficient to state a claim under Section 1985. *See Wang v. Miller*, 356 F. App'x 516, 517 (2d Cir. 2009) (summary order); *see also*

---

informed that Plaintiff Figuereo may be involved in organizing a demonstration to take place in the City on March 27, 2025, and requested that counsel complete and file a demonstration declaration with the City. *See id.* at ¶ 534. This allegation, which concerns a separate demonstration that took place approximately one year after the issuance of charges against Plaintiff Figuereo in May 2024, is insufficient to adequately allege that Defendant Coll planned, directed, or authorized the issuance of the May 2024 charges.

*Hamza*, 2025 WL 3295404, at \*27.  Plaintiffs do not provide any factual basis that supports a meeting of the minds between Defendants indicating that they entered into an express or tacit agreement to achieve some unlawful end.  *See Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003). Nor do Plaintiffs describe an overt act committed by any of the Defendants.  *See Muhammad v. Sturtz*, No. 24-cv-35, 2026 WL 177830, at \*6 n.2 (N.D.N.Y. Jan. 22, 2026) (noting that "claims arising under [Section 1985(3)] must be pled, with at least some degree of particularity, overt acts which the defendants engaged in which were reasonabl[y] related to the promotion of the claimed conspiracy" (internal quotation marks and citation omitted)).

Accordingly, Plaintiffs fail to state a claim under Section 1985(3) against Defendant Safford.

## IV.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant Coll's motion to dismiss, Dkt. No. 70, is **GRANTED in its entirety**; and the Court further

**ORDERS** that Defendant Safford's motion to dismiss, Dkt. No. 71, is **GRANTED in its entirety**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 13, 2026
Albany, New York

Anne M. Nardacci
U.S. District Judge